WARD v. BLACKWOOD, AS ADMINISTRATOR.

1. VERDICT: `Contrary to evidence. Counter-claim.`

Although the verdict of the jury against a defendant's counter-claim, in actions for damages, be wholly contrary to the evidence, it is no ground for a new trial or reversal, unless it is prejudicial to him; and it is not prejudicial if he has no right to plead the damages claimed by him as a counter-claim.

2. COUNTER-CLAIM: *Provocation for assault and battery.*

In an action for damages for an assault and battery, the injury to the defendant, which provoked the offense is not connected with the subject of the action, and cannot be pleaded as a counter-claim.

APPLICATION: Ward was lessee of the penitentiary. Massey was guarding prisoners for him at work outside of the penitentiary, and by gross carelessness suffered several of them to escape, to the great injury of Ward. Ward came up in the midst of the confusion and excitement at the escape, and enraged at Massey's carelessness, assaulted and beat him severely. Massey sued for the assault and battery, and Ward filed a counter-claim for the injury resulting from the escape through Massey's negligence. HELD: That the escape of the prisoners had no connection with the subject of the action, and was not a proper subject of a counter-claim.

3. INSTRUCTIONS: *To be construed as a whole.*

Several instructions upon the same subject matter are to be taken and construed together as a whole.

4. DAMAGES: *Measure of personal injury. Pain and suffering.*

There is no legal measure of damages for the pain and suffering resulting from a personal injury, and the amount of the damages must be left, to some extent, to the fair discretion and judgment of the jury.

5. VERDICT: *Not impeachable by juror.*

The affidavit of juror that the differences of the jurors as to the amount of damages to be rendered in a case was determined by lot, is not admissible to impeach the verdict.

APPEAL from *Conway* Circuit Court.

Hon. F. T. VAUGHAN, Judge.

Ward v. Blackwood, as Administrator.

*R. C. Newton* and *Geo. W. Caruth,* for appellant.

1.   The verdict is excessive and the result of prejudice. The amount shows passion, prejudice, or an incorrect appreciation of the law applicable to the case.

2.   The verdict was contrary to the law and evidence.

3.   The court erred in giving the fourth instruction for plaintiff:   (*a.*) It is abstract.   (*b.*) It furnishes an improper measure of damages.   (*c.*) Because it permits the jury to fix damages without reference to the evidence.

Instructions inapplicable to the facts proved, and calculated to mislead the jury, or based upon unproved hypotheses, should not be given.   (*41 Ark., 382.*)   This is a case where death results from the trespass, and is not comprehended by *sec. 4760, Gantt's Digest.*

The *act of February 3, 1875,* only applies to railroads.

The instruction is objectionable because the jury are instructed that, "in estimating the damages for such personal indignity and bodily pain and suffering, it will be the duty of the jury to say, within the bounds of reason and justice, what amount they believe to be a fair compensation for the injury sustained."   The law allows no such latitude.   Not a single reference is made in the entire instruction to the evidence, but the jury are permitted to allow what they believe to be fair (not from the evidence), but just so it is within the "bounds of reason and justice."

The verdict was obtained by lot.   *5 Cal., 44; 15 La., 129; 7 Iowa, 90; 20 ib., 486; 4 Wis., 67.*

The jury entirely ignored the counter-claim of appellant, which they should, under the instructions of the court, have allowed.

*W. L. Terry* and *Blackwood & Williams,* for appellee.

Review the evidence and contend that it is amply suffi-

cient to sustain the verdict, and that it was not excessive.

Courts are loth to disturb verdicts on account of being excessive. In most if not all the cases where it has disturbed them on that ground, the elements of damage were pecuniary entirely, and susceptible of some definite computation. (*25 Ark., 380; 39 ib.; 491.*) See *44 Ark., 330.*

The burden was on appellant to establish his counter-claim.

But appellant's claim for damages was not a proper subject for a counter-claim in this suit. It neither grew out of the transaction, nor was it connected with the subject of the action. *29 Ark., 489; 17 ib, 228; 30 ib., 535; 31 ib., 319; Pomeroy Rem.,* etc., sec. *790; 35 Cal., 274.*

Defendant cannot complain of errors concerning a counter-claim that had no business there. His substantial rights have not been effected. *Mansf. Dig.,* sec. *5083.*

This court will not disturb a verdict where there is any evidence to sustain it. *22 Ark., 477; 2 ib., 364; 34 ib., 761; 11 ib., 630; 14 ib., 530; 23 ib., 32; 26 ib., 362; 27 ib., 517; 27 ib., 593; 31 ib., 165.*

This case is *not* like a *new snit* brought by the administrator *after* Massey's death. This court in *41 Ark., 295,* laid down distinctly the proper elements of damages recoverable. As to the distinction between a suit of this kind and one brought *after the death* of the party injured. See *89 N. Y., 24; 106 Mass., 143; 9 Cush., 108; ib., 478; Field on Dam.,* sec. *643.*

Instructions are to be tested as a *whole,* and if as a whole they present a correct view of the law, error cannot be founded upon the separate weakness of any one. *21 Ark., 357; 22 ib., 481; 17 ib., 326; 24 ib., 267.*

The fourth instruction was proper. *44 Ark., 331; 1 Sutherland on Dam.,* vol. *3, p. 259.*

The affidavits of the three jurors that the verdict was

arrived at by lot were inadmissible in a civil case. *15 Ark.,* *409; 4 Bos. & Pul., 326; 5 Cal., 44; 4 Wis., 85; 18 ib., 594; 12 Pick., 521; 2 Dal., 55; 1 Bebb. (Ky.) 398; 3 Humph., 157; Proffatt on Jury Trials, sec. 408; Thomp. & Mer. on Jury Trials, sec. 414.*

*Section 2298, Mansfield's Digest,* is taken from the *Criminal Code, sec. 269,* and has no reference to civil actions.

The affidavit in this case does not show any previous agreement to be bound by the result. *1 Mass., 542; 4 Johns., 487; 3 Humph., 160; 2 Dal., 55; Proffatt Jury Trial, sec. 407; Thomp. & Mer. on Jury Trial, sec. 410.*

But the alleged misconduct of the jury did not operate to the prejudice of appellant. *Thomp. & Mer. on Jury Trial, secs. 422–3; 26 Ind., 171; 25 ib., 326; 20 Ark., 50; 26 ib., 328; 28 ib., 166; 33 ib., 186; sec. 5083, Mansf. Dig.*

BATTLE, J. This action was brought by Massey, in his lifetime, against Ward, for damages caused by an assault and battery committed upon him by Ward, on the 25th of August, 1880. Massey having died since its commencement, it was revived in the name of Blackwood, as his administrator.

Ward answered, and alleged that, at the time the assault and battery was committed, he was the lessee and keeper of the Arkansas penitentiary. That on the day of the trespass complained of, Massey was one of the prison guards, in charge of a large number of convicts, engaged at work at Argenta. That sometime in the morning, Massey negligently went to sleep, and suffered several of the most desperate convicts to escape. That in the confusion produced by this escape, he went into the yard where Massey was, and struck him two or three times with a piece of thin scantling. That he was damaged to the extent of $1500 by reason of the loss of valuable dogs

and the labor of the escaped convicts, caused by Massey's negligence. He asked for judgment against plaintiff for the amount of his damages.

There was evidence introduced on the trial of the action tending to prove, among other things, the following state of facts: On the 25th of August, 1880, Ward was the lessee and keeper of the Arkansas penitentiary, and Massey was in his employment as a guard over a large number of convicts, at work in Ward's brick yard, opposite the city of Little Rock. Three of these convicts forcibly disarmed Massey, while on guard, and made their escape. Ward was not in the brick yard at the time, but came up soon after, and seeing Massey standing guard with a piece of plank in his hand, accused him of letting the convicts escape, and Massey replied, "I could not help it. They slipped up behind me, back of the lumber pile." Ward, thereupon, abused him and ordered him out of the yard, and as he turned to go, struck him violently on the back, and Massey fell, and as he got up Ward threw a piece of brick at him, and as he was going out ordered the convicts present to put him out; and they seized him and threw him down. The injuries inflicted by Ward were serious and painful.

On the other hand, there was evidence introduced tending to prove, that there was no lumber, at the time of the escape of the convicts, nearer to the place where Massey at a prior time had been placed as a guard, and where Ward found him soon after the escape, than seventy-five yards; that Massey, several days after the escape, admitted he was asleep when the convicts disarmed him; that the period of the confinement of the three convicts who escaped extended beyond the year 1883; that Ward's lease expired in 1883, and that the labor of the three convicts was worth $675 a year.

Ward v. Blackwood, as Administrator.

The trial court directed the jury to respond to the following interrogatory: "Do you find from the evidence that the convicts escaped through the negligence of Massey?"

The jury returned a verdict in favor of plaintiff for $1800, and to the interrogatory, answered, "No." The defendant filed a motion for a new trial, and the plaintiff remitting $75, it was overruled; and the defendant saved exceptions and appealed.

It is first insisted by appellant that he was entitled to judgment on his counter-claim to the extent of the damages proven; that the jury, in disregard of the law and evidence, refused to so find, and that, as to this issue, the verdict was totally unsupported; and that, therefore, the judgment of the court below should be reversed. If it be true that the special finding of the jury was contrary to the evidence, it would be no ground for reversal, unless it was prejudicial to appellant, and it was not prejudicial if he had not the right to plead the damages claimed by him as a counter-claim. Had he this right? Appellee insisted he had not.

The code of civil practice of this state provides that a defendant may set forth in his answer as many grounds of defense, counter-claims and set-offs, whether legal or equitable, as he shall have. The counter-claim meant by the code is defined to be "a cause of action in favor of the defendants, or some of them, against the plaintiffs or some of them, arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action." *Mansfield's Digest, secs. 5033, 5034.*

The alleged tort of the defendant, which constitutes the foundation of plaintiff's action, is the assault and battery committed by appellant; and the foundation of the appel-

26—48

*Margin notes:*

1. VERDICT. Contrary to evidence. Counter-claim.

2. COUNTER-CLAIM: Provocation for assault and battery.

lant's counter claim, is the escape of the three convicts through the alleged negligence of Massey. It cannot be said that the escape of the three convicts arose out of the assault and battery committed by Ward. Is it connected with the subject of the action? What is the subject of an action?

Mr. Pomeroy, in his work on Remedies and Remedial Rights, says: "It would, as it seems to me, to be correct to say in all cases, legal or equitable, that the subject of the action is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises. Thus the right of property and posession in ejectment and replevin, the right of posession in trover or trespass, the right to the money in all cases of debt, and the like, would be the subjects of the respective actions. Although in a certain sense, and in some classes of suits, the things themselves, the lands or chattels, may be regarded as the subject, and are sometimes spoken of as such, yet this cannot be true in all cases; for in many actions there is no such specific thing in controversy over which a right of property exists. The primary right, however, always exists, and is always the very central element of the controversy around which all the other elements are grouped, and to which they are subordinate." *Pomeroy on Remedies, sec. 775; Bliss on Code Pleadings, sec. 126.*

This view of what is the subject of an action appears to have been adopted by this court in *White v. Reagan, 32 Ark., 281.*

A few cases will serve to illustrate what the subject of an action is.

The *G. & H. Manf. Co. v. Hall, 61 N. Y., 226,* was an action to restrain the defendant from using an alleged trade mark, "Number 10," on the grounds that it was a

part of the plaintiff's trade mark. The defendant admitted that he used the words, "Number 10," in his business, but alleged it was a part of his own trade mark, and set up that the plaintiff had fraudulently used the same for the purpose of unfairly securing the defendant's customers, and asked by way of counter-claim, that the plaintiff might be enjoined from using the words in the course of its business, to the defendant's damage. The court said: "There will then be two distinct cases provided under subdivision 1: [a] A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim. [b] A cause of action connected with the subject of the action." The present case falls under the last of these instances.

A subject is that on which any operation, either mental or material, is performed ; as, a subject for contemplation or controversy. The subject of an action is either property (as illustrated by a real action), or a violated right. In the present instance the subject of the plaintiff's action was the expression, "Number 10," of which he claimed ownership as a designation of his business. The defendant's counter-claim is a cause of action against the plaintiff growing out of his infringement of the defendant's right to the same expression, which he asserts belongs to himself. In the language of the code, it is "connected with it. * * * The policy of the code requires a liberal construction of this section, to the end that controversies between the same parties, on the same subject-matter, may be adjusted in a single action." See, also, *Cornelius v. Kessel, 58 Wis., 237.*

*Simpkins v. Columbia & Greenville R. R. Co., 20 S. C., 258,* was an action against a railroad company for the killing of two horses by the defendant's train. The defendant denied liability, and asserted as. a counter-claim

injuries done to the engine and cars of the company by the presence of these horses on the track at the time they were killed. The court said: " The alleged tort of the defendant, which constituted the foundation of plaintiff's action, is the negligent running of defendant's cars by which his horses were killed; the alleged tort of plaintiff, which is the foundation of defendant's counter-claim, was the alleged illegal presence of his horses upon the railroad track by which the train was thrown from the track and the engine injured. The injury to the engine in point of time, it is true, followed in quick succession that of the injury to the horses; but it cannot be said that the illegal presence of the horses on the track, which is the foundation of defendant's counter-claim, arose out of the negligence of defendant in running the cars, which is the foundation of plaintiff's action. Nor was it connected with the subject of plaintiff's action." And the court held that the damages to the defendant's engine, resulting from the trespass of plaintiff's horses on its track, were not a proper subject of a counter-claim, because they did not arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim, and were not connected with the subject of the action.

In California they have a statute which defines a counter-claim as follows: " The counter-claim mentioned in the last section shall be one existing in favor of the defendant or plaintiff, and against a plaintiff or defendant, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: *First*—A cause of action arising out of the transaction set forth in the complaint or answer as the foundation of the plaintiff's claim or defendant's defense, or *connected with the subject of the action. Second*—In an action arising upon contract, any other cause of action

arising also upon contract and existing at the commencement of the action." In *Macdougal v. Maguire, 35 Col.; 274*, the court held, that in an action to recover damages for an assault and battery, a libel published by the plaintiff of and concerning the defendant which was the provocation to the offense, did not constitute a counter-claim under this statute.

*Barhyte v. Hughes, 33 Barb , 320,* was an action for an assault and battery. The defendant set up, by way of counter-claim, an assault and battery committed upon him by the plaintiff *prior* to the one described in the complaint. The court held that the two occurrences were so independent of each other that they could not be disposed of in one action.

The subject of this action was the right of Massey to immunity from personal violence. The breach or infringement of that right constituted appellee's cause of action. The cause of action of appellant against appellee, which was the escape of three convicts through the alleged negligence of Massey, had no connection whatever, direct or remote, with the' subject of this action, and was not a proper subject of a counter-claim.

But it is insisted by appellant that the special finding of the jury contrary to evidence proves that the verdict of the jury was the result of prejudice against him. The right of plaintiff to recover damages is not denied. Defendant admitted the assault and battery, and thereby necessarily conceded the plaintiff's right to recover. If the damages allowed by the jury were not excessive he had no right to complain. Verdicts of juries are not set aside on account of the amount of recovery unless the amount is excessive. If the plaintiff was entitled to recover, and the amount of the verdict was a fair compensation for the injuries complained of, the verdict of the

jury should be permitted to stand. Upon a careful consideration of all the evidence in the case we do not think the damages recovered were excessive.

It is next urged by appellant that the court below erred in instructing the jury at the instance of plaintiff, as follows:

" The court instructs the jury that the defendant, Ward, is liable in this action, not only for any wrongful assault which he himself may have made upon the plaintiff's intestate, Massey, but also for any wrongful assault which he may have caused to be made upon him by convicts acting under his orders on the occasion named in the complaint. If the jury find this to be true, and if the jury find for the plaintiff, it will be their duty to find for the plaintiff in such amount as would be a fair compensation to the plaintiff's intestate, Massey, for the injuries he suffered from any such wrongful assault; and in estimating such amount, the jury may take into consideration the pecuniary outlay for medical and surgical attendance, loss of time and labor, and diminished capacity to work thereby, occasioned from the date of such assault to said Massey's death, and also the personal indignity involved in such an assault, and the bodily pain and suffering said Massey may have endured therefrom; and in estimating the damages for such personal indignity and bodily pain and suffering, it will be the duty of the jury to say, within the bounds of reason and justice, what amount they believe to be a fair compensation for the injury sustained."

It is insisted that this instruction was erroneous because it furnished an improper measure of damages. But this question was settled by this court in this action when it was here before  Upon this point it said:  " The elements of damages are:  The personal indignity involved in the assault; the plaintiff's bodily pain and suffering; loss

Ward v. Blackwood, as Administrator.

of time and labor, and diminished capacity to work from the date of the assault to Massey's death, and the expense of medical and surgical attendance during his injuries consequent upon the injuries received." *Ward v. Blackwood, 41 Ark., 300.*

It is next contended that this instruction was erroneous because it permitted the jury to allow such damages as they, within the bounds of reason and justice believed to be a fair compensation for the injury sustained, without regard to the evidence. But this and all other instructions given to the jury are to be considered together and as a whole. In this connection the court instructed the jury, among other things, that the burden of proof was upon the plaintiff to show by evidence fairly preponderating that Massey was unlawfully assaulted by Ward, and also to what extent Massey was *actually damaged;* and that if they found Ward unlawfully assaulted and beat Massey, then Ward was liable for actual damages, and that in arriving at the amount they should assess, they should take into consideration all the circumstances surrounding both parties. In construing these instructions together we see no conclusion to which the jury could fairly and reasonably have come, except that, in considering their verdict and the amount thereof, they should be governed by the evidence.

3. Instructions to be construed together as a whole.

Moreover, one of the elements of damages in the case was the pain and suffering caused by the wrong complained of, for which there is no legal measure of damage. The amount allowed therefor, if any, must to some extent have been left to the fair discretion and judgment of the jury.

One of the grounds of appellant's motion for a new trial was misconduct of the jury in arriving at their verdict,

4. Verdict, not impeachable by juror.

dict by lot.  In support of this ground the following affidavit was filed:

" On this day comes J. D. Murphy, I. B. Durrall and J. M. Simpson, who state on oath that they were members of the jury who tried and returned the verdict ' in the above entitled cause; that the jury differed as to the amount of the said verdict, and finally concluded to write the amount of $2000 on one slip of paper, and the sum of $1800 on another slip of paper, and the two were then placed in a hat and one of the jurors was requested to draw one of said pieces of paper out of the hat, which was done, and the slip of paper with the $1800 written upon it was drawn, and the verdict was made and rendered at such amount, and so returned it."

And the plaintiff objected to the admission of it as evidence for any purpose whatever.  Was it admissible?

In *Pleasant v. Heard, 15 Ark., 407*, the affidavit of Strawn, one of the jurors, was filed to show that the jury agreed that each member thereof should write down the amount that he was in favor of, and that these several amounts should be added up and their sum divided by twelve, the number of the jurors, and that the quotient should be taken and written as the amount of their verdict, which was accordingly done, and the verdict so arrived at was returned into court as the verdict of the jury. Chief Justice English, in delivering the opinion of the court, said:  " Though there are some conflicting cases, we think it may be safely decided, upon authority, and for many good reasons, that the affidavit of the juror, Strawn, was not admissible in this case to impeach the verdict rendered by him for the cause stated in the affidavit."  *Thompson & Merriam on Jury Trials, sec. 414.*

The rule laid down in *Pleasant v. Heard* has not been

changed or repealed in civil cases, but on the contrary, in such cases remains in full force.

We find no error in the judgment of the court below prejudicial to appellant, and it is affimred.