We find no error in the instructions, and the judgment is affirmed.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

DALLAS.

Opinion delivered January 3, 1910.

1. CARRIERS—DUTY TO DRUNKEN PASSENGER.—Evidence tending to prove that a passenger was put off a train while known to the trainmen to be helplessly drunk, with no one to assist him and exposed to danger from a train which was to pass soon, and that he was run over by such train and injured, was sufficient to sustain a finding of negligence upon the carrier's part. (Page 212.)

2. EVIDENCE—ADMISSIONS.—Statements made by a party to a suit against his interest, touching material facts, are competent and original testimony. (Page 214.)

3. INSTRUCTIONS—SPECIFIC OBJECTION.—Ambiguity in an instruction should be reached by a specific objection. (Page 215.)

4. DAMAGES—PAIN AND SUFFERING—INSTRUCTION.—While it is difficult to fix a measure of damages for pain and suffering, for the reason that none would be an acceptable inducement to suffer it, yet in determining the amount of compensation for it the jury must be governed by the evidence in the case; and it is error to instruct them that they may render verdict for any amount which they deem right for pain and suffering, regardless of the evidence. (Page 215.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

Fred Dallas brought suit against the St. Louis, Iron Mountain & Southern Railway Company, for injuries alleged to have been received by him in being wrongfully ejected from one of its passenger trains, and in being left in an unconscious condition near the tracks of its line of railway, whereby his leg was cut off by another of defendant's trains, which passed shortly afterwards.

Fred Dallas, the plaintiff, testified substantially as follows:

On September 29, 1907, about 2 o'clock P. M., he took defendant's passenger No. 806 at El Dorado for Camden, Arkansas. When the train reached Camden, he concluded to go to Malvern, Ark., and paid his passage to that place. The train auditor, upon receipt of his fare, put the usual check in his hat. When plaintiff boarded the train, he was sober, but he began drinking whisky on the way, and became drunk. When the train stopped at Walco, a station about two miles south of Malvern, he started out to look around. When he reached the steps, some one (he thinks was one of the train crew) pushed him from the steps of the coach. He says he fell backwards, and did not remember anything more until the next morning. When he recovered consciousness, he found that his leg had been cut off, but says that he does not remember any of the attendant circumstances.

Other passengers on train No. 806 on the day in question testify that they saw one of the train crew shove the plaintiff from the steps of the coach. One witness said that when the plaintiff fell the brakeman kicked him out of the way. Other witnesses testified that they saw him lying within eight or ten feet of the track, and that he was unconscious. Others say that he was unconscious, but was some distance further away.

The train crew were witnesses for the defendant, and deny that the plaintiff was kicked or shoved off of the steps of the train, or that they knew he was drunk, or was left lying near the track in an unconscious condition. The train stopped at Walco about 8 o'clock P. M., which at that season of the year was shortly after dark. The train proceeded to Malvern, about two miles distant, and while there defendant's passenger train No. 223, southbound, passed it. When it arrived at Walco, two or three passengers got off, and the train started up. Just then other passengers came out of the coach. and the train was again stopped

to discharge them. It had moved up about thirty (30) feet. When it made the second stop, a cry of distress was heard from the rear of the train. An investigation was made, and plaintiff was found under the rear trucks under the rear coach, with the wheels resting on his legs. He was released as quickly as possible,. placed on a cot and carried to Malvern, where his leg was amputated. Walco is a station two miles south of Malvern, established for the benefit of a lumber mill and its employees.

There was a trial by jury, and a verdict for the plaintiff. The defendant has appealed from the judgment rendered upon the verdict.

*Kinsworthy & Rhoton, Bridges, Wooldridge & Gantt,* and *James H. Stevenson,* for appellant.

1. The evidence does not sustain the verdict. No presumption of negligence arises from the mere fact of the injury, and the doctrine of *res ipsa loquitur* does not apply unless the accident or injury, unexplained by attendant circumstances, might as plausibly have resulted from negligence on the part of the passenger as the carrier. 75 Ark. 479, 491. In this case the passenger was sober when he boarded the train, and became drunken thereafter, and there is no showing that those employees who were in charge of the train had any notice or knowledge of his drunken condition. In such case they owed him no duty beyond that which was due to the ordinary passenger. 2 Hutchinson on Car. § 994, p. 1145; *Id.* § 1083, pp. 1261-2; 94 Ind. 276; 130 Mich. 666; 88 Ky. 232; 44 S. W. 648; 32 O. St. 345; 183 Pa. 638; 21 Ia. 15. Intoxication is a self-imposed disability which does not relieve one of his duty to exercise proper care to avoid danger. 71 Tex. 361; 136 Ala. 178.

2. The seventh instruction given at plaintiff's request was erroneous in stating that "the law furnishes you no measure of damages for pain and suffering. The amount to be assessed by you, if any, must be left to the sound judgment and fair discretion of the jury." Such an instruction leaves the jury at liberty to assess any amount they may see fit as damages. While there is no definite rule, there is nevertheless a "measure of damages" in such cases, and that is such an amount as is *compensation for the suffering.*

3. It was error to refuse to allow the witness Ellington to

read to the jury the statement of the plaintiff made to him in writing and signed by said plaintiff.  31 Ark. 684. ·

*Henry B. Means* and *John C. Ross,* for appellee.

1.   Where the ejection of a passenger who is in a drunken condition, and is at the time incapacitated to care for himself, is wrongful, and is made in an improper manner, time, place and circumstances of the passenger considered, the carrier is liable; otherwise not.  83 Ark. 6; 82 Ark. 289; 42 Ark. 321; 56 Ark. 603; *Id.* 51; 80 Ark. 158; 84 Ark. 241.  In this case the wrongful ejection was the proximate cause of the injury.  Carriers of passengers are held to the highest degree of care, and are responsible for the smallest negligence.  40 Ark. 298; 51 Ark. 459; 2 Hutchinson on Carriers, § 1083, pp. 1260, 1261-2; *Id.* § 994, p. 1144.

Where the ejection is rightful, made in a proper manner and at a proper time and place, yet if there is want of proper care in view of the passenger's condition and the place where he is left, the carrier may be held liable for his subsequent injury. 108 Ala. 62, 67; 60 Ala. 621; 27 Conn. 393; 3 O. St. 172; 58 Ia. 348; 37 Cal. 400; 97 Ky. 330; 33 Kan. 543; 3 Wood on Railroads, · § § 363-4; 1 Am. & Eng. Enc. of L. 748.  See also 120 Ind. 470; 118 Mass. 251; 32-O. St. 345; 21 Ia. 15; 52 Ia. 533; 81 Ky. 624.

2.   The refusal to allow the witness Ellington to read appellee's statement to the jury was proper.  He was permitted to refer to it in testifying, and it was unnecessary to read the whole of it to the jury.  The request was to read the whole statement, and not any alleged contradictory part thereof, which was improper.  68 Ark. 587.  Moreover, appellant did not bring itself within the rule requiring a specific request to read an alleged contradictory part of the statement.  *Id.*

Hart, J. (after stating the facts).  1.  It is earnestly insisted by counsel for defendant that there is not sufficient evidence to support the verdict.  The duty of the carrier to a drunk passenger and its liability for the neglect of it is stated by Mr. Hutchinson as follows:

"And this rule is true whether the attendant danger arises from the natural infirmity of the person or was self-imposed. Thus, if a person on a train is so intoxicated as to render him unconscious of danger and unable to appreciate his position, surroundings and perils and his duty to avoid them, or he does not possess the power of locomotion, and is put off the train by a con-

ductor on account of his misconduct, and the place where he is put off and left is dangerous to one in his condition, and these facts are known to the conductor, he would be guilty of recklessness and wanton negligence, rendering the company in whose employment he is liable for damages resulting from his negligence, although the person ejected and injured might have been legally ejected in a proper manner and at a proper place." 2 Hutch. Carr., § 1083, p. 1260.

"Upon like principles, the law would not justify a conductor in putting off a passenger at a time and place and under conditions and circumstances which would expose him unnecessarily to great peril of life or bodily harm, and, this, too, whether the danger arose from the natural infirmity of the person or was self-imposed. If the conductor did not know of the infirmity of the person and the peril attending the ejection, there would be no liability arising from the exercise of the right and performance of the duty. It is the fact of notice or knowledge of the danger on the part of the conductor under such circumstances that constitutes the act culpable or wilful wrong. If the deceased was intoxicated to the degree that he was unconscious of danger, could not grasp his position and surroundings, and his duty to avoid danger from passing trains, or did not possess the power of locomotion, and the place where he was put off and left was dangerous to one in his condition, and these facts were known to the conductor, the conductor would be guilty of such negligence as to render the defendant liable for damages resulting from such misconduct. * * * Mere intoxication, which did not take away consciousness and the power to consider and understand the danger to which he was exposed, nor deprive him of physical capacity to take care of himself and to avoid danger, would not relieve him from the responsibility of exercising due care, after he was put off the train; and, if he was killed in consequence of such neglect of duty on his part, the plaintiff cannot recover. The killing under these circumstances would be the result of his own negligence, which proximately contributed to it." *Johnson v. Louisville, etc., Rd. Co.* (Ala.), 53 Am. St. Rep. 39.

In the case of *Black v. New York, New Haven & Hartford Railway Company,* 193 Mass. 448, 9 Am. & Eng. Ann. Cas. 485, the court held:

"Where the plaintiff's negligence or wrongdoing has placed his person or property in a dangerous situation, which is beyond his immediate control, and the defendant, having full knowledge of the dangerous situation and full opportunity, by the exercise of reasonable care, to avoid any injury, nevertheless causes an injury, he is liable for the injury, as the plaintiff's former negligence is only remotely connected with the accident, while the defendant's conduct is the sole, direct and proximate cause of it." The reason of the rule is that the law subordinates personal rights to the preservation of life. The rule is firmly established, but the application of it sometimes gives rise to difficult questions. In the case at bar the defendant's theory of the case was that plaintiff was injured while trying to board its southbound train when in motion; but the jury might have found that the plaintiff was shoved from one of the defendant's passenger trains by its employees, and was left lying close to the track ·in an unconscious condition; that, with knowledge of his helpless condition and of the further fact that it was dark, and that there was no one there to render him assistance, they left him near the track exposed to the dangers of a train which would necessarily pass in a short time, and that, as a result thereof, the plaintiff was injured. Hence we conclude that there was sufficient evidence to support the verdict of the jury.

2. The claim agent of the defendant testified that on the 21st day of October, 1907, the plaintiff gave a statement of the facts and circumstances of his injury. The said ·statement was in writing and signed by the plaintiff. Plaintiff admitted his signature to the statement, but denied having said any of the matters contained in it. Defendant offered to introduce the statement in evidence, and assigns as error the action of the court in excluding it. The court should have admitted the statement in evidence. The rule in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Faisst,* 68 Ark. 592, invoked by counsel for plaintiff, is not applicable; for plaintiff sustained two relations to this suit. He was both plaintiff and witness. As said in the case of *Collins* v. *Mack,* 31 Ark., at p. 694, "the acts and declarations of a party to a suit, when they afford any presumption against him, may be proved by the opposing party." It is a well recognized rule of evidence that any statements which may have been made by a party to a suit against his interest, touching material facts, are competent

as original testimony. *Black* v. *Epstein,* 120 S. W. (Mo.) 755; *Louisville & N. R. Co.* v. *Joshlin,* 110 S. W. (Ky.) 382.

3. Counsel for defendant also insist that the court erred in giving instruction No. 7 at the instance of the plaintiff. The instruction is to some extent ambiguous and misleading in this that it might be inferred from it that the jury should render a verdict for any amount they deemed right for the pain and suffering, regardless of the evidence. But the defect could have been cured by a specific objection. For that reason we would not reverse the case for this alleged error; but, inasmuch as the case must be reversed for the error already indicated, we deem it proper to caution the court in regard to the form of the instruction.

While, as we have said, it is difficult to fix a measure of damages for pain and suffering, for the reason that none would be an acceptable inducement to suffer it, yet, in determining the amount of compensation for it, the jury must be governed by the evidence in the case. See *Aluminum Company of North America* v. *Ramsey,* 89 Ark. 522; *Ward* v. *Blackwood,* 48 Ark. 396; *Railway Company* v. *Dobbins,* 60 Ark. 485; *St. Louis, I. M. & So. Ry. Co.* v. *Cantrell,* 37 Ark. 522; *Barlow* v. *Lowder,* 35 Ark. 496.

For the error in excluding the written statement of plaintiff from the jury the judgment will be reversed, and the cause remanded for a new trial.