MARKHAM *v.* STATE.

Opinion delivered July 11, 1921.

1. CRIMINAL LAW—AUGUMENTATIVE INSTRUCTIONS.—It was not error to refuse instructions requested by appellant which were argumentative in form.

2. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error

to refuse instructions asked by appellant where instructions given by the court covered the same subject-matter.

3. INTOXICATING LIQUORS—MANUFACTURE—INSTRUCTION.—An instruction, in a prosecution for the crime of manufacturing, and being interested in the manufacture of, intoxicating liquors, that "the fact that the parties, if it is a fact, that they visited the still frequently or any at all, are only circumstances that the jury may consider in arriving at their guilt" was not open to a general objection as assuming the defendant's guilt.

4   CRIMINAL LAW—TRIAL—COMMENT ON DEFENDANT'S FAILURE TO TESTIFY.—In a prosecution for manufacturing intoxicating liquor a statement by the prosecuting attorney that none of the defendants "denied that they went to the still" was not objectionable as a comment upon the defendant's failure to testify, within the prohibition of Crawford and Moses' Dig., § 3125.

Appeal from Pike Circuit Court; *James S. Steel,* Judge; affirmed.

*W. S. Coblentz,* for appellant.

1. The court erred in refusing appellants' prayers for instructions. The court's instruction was equivalent to a direction of a verdict. It is error for a court in its charge to ignore the bearing which certain facts have on the issues involved. 14 R. C. L. 794. Accused is entitled to have his instructions given in his own language if they correctly propound the law applicable. 14 R. C. L. 806.

2. Argument of prosecuting attorney was a reference to this failure of the defendant to testify. 10 R. C. L. 888; 83 Miss. 488; 89 Ark. 391.

*J. S. Utley,* Attorney General, *Elbert Godwin,* assistant, and *W. T. Hammock,* Assistant, for appellee.

1. Appellants' refused instructions were covered by those given by the court.

2. The argument of the prosecuting attorney was not within the prohibition of the statute. 108 Ark. 191; 96 Ark. 177; 2 R. C. L. 429.

WOOD, J. The appellants were separately indicted at the March term of the Pike County Circuit Court for

the crime of manufacturing and being interested in the manufacture of intoxicating liquors. The cases were consolidated for trial.

J. E. Chaney testified that he was the sheriff of Pike County, and was acquainted with the appellants. Some time in February, 1921, he discovered a still near Franklin's sawmill, about three hundred and fifty yards from Perry Franklin's house. He saw five persons coming away from the still on Thursday, and on Friday he again saw five persons at the still, among whom were the appellants. "They were working around there—brought up a little turn of pine and were working around the furnace; filled up the boiler, put the cap on, wrapped a rag around it and walked away." When the parties who were at the still on Thursday went away, witness went down there and found a hog in the pen which seemed to be pretty helpless, intoxicated. Witness also found a lot of barrels, boxes and about two or three hundred gallons of beer. Later, on Friday night, witness saw some parties go past the still and saw them go back carrying some glass jugs. One of the persons was the size of Jewell Sparks, and the other was the size of Green.

Another witness testified that he saw Jewell Sparks at the still. He had a bucket. Witness heard him hit the bucket against the barrels there, and thought he was getting a bucket of water. When he got back up to Perry Franklin's house, he heard one fellow say, "If that is not enough, I will go back and get some more." The parties he saw going to the still that night were carrying jugs. One of the parties corresponded in size with Jewell Sparks and another with Green or Martin. It was shown that the appellants were arrested on Sunday, and that some bottles and glass jugs were found in a sack at Perry Franklin's house, and the beer when destroyed on Sunday was ready to run.

Perry Franklin testified for the appellants to the effect that he had been running the sawmill mentioned

about two months. He discovered a still near his home on Monday before he was arrested on Sunday. He went to the still on Tuesday and looked around a little and drank a little beer; went back on Thursday and got a sow out of the pen where the still was; that on Friday appellants and others working at the mill left the mill and went to witness' house. Witness was not at the still on Friday. Jewell Sparks did not bring a bucket of beer to his house. Witness didn't tell appellants about the still, and they were never at the still, so far as witness knew. Witness stated that on Friday evening he, Ben Davidson, and the appellants left the mill together. Some of them had been drinking at the mill that week. It was shown by other witnesses on behalf of the appellants that the mill closed down about five o'clock on Friday evening and that in about thirty minutes after closing time the appellants came back to the mill. In rebuttal, Matthew Cummins testified that he heard Jewell Sparks admit that he had frequented the still. Sparks said he went up there and carried a bucket of beer on Thursday evening to the mill; that when he got to court he was going to tell that he went up there twice after beer, and if they stuck him for it he would just have to go.

The appellants asked the court to grant the following prayers for instructions:

"The mere fact, if shown, that these boys went there and drank beer would not be sufficient to convict. You are instructed if you find from the evidence in this case beyond a reasonable doubt that the defendants frequently visited the still, drank beer there at it, are circumstances which the jury may consider with all the other facts and circumstances in determining whether or not they were interested in the manufacture of intoxicating liquors.

"You are further instructed, gentlemen of the jury, that, even though you should believe that these parties visited the still and drank beer, or carried beer away

from the still, from this fact alone you can not convict the defendants; but it would be a mere circumstance which you may consider, with all the other facts and circumstances in the case, and, unless you are convinced beyond a reasonable doubt, notwithstanding although you should believe they visited the still and drank beer, that they manufactured or were interested in the manufacture of intoxicating liquors, you will acquit the defendants.''

Mr. Rountree, one of the attorneys for the appellants, thereupon remarked: ''The fact alone that they were there and drank beer is not of itself sufficient to warrant the jury in finding appellants guilty.'' To which the court replied: ''That is for the jury to say—that is a circumstance they may consider.''

The court refused to grant the above prayers, saying: ''I want to give one along that line.'' The appellants duly excepted to the ruling of the court. The court, among others, gave the following instruction:

''The fact that the parties, if it is a fact, that they visited the still frequently, or any at all, are only circumstances that the jury may consider in arriving at their guilt. You must believe, beyond a reasonable doubt, from all the facts and circumstances in evidence, that the defendants did manufacture the whiskey, or were interested, or aided or abetted as defined by the instructions I have read to you. The law presumes the defendants innocent until their guilt is proven beyond a reasonable doubt.''

In the course of his argument the prosecuting attorney used the following language: ''We find the five leaving the mill and going in the direction of the still. None of them denied that they went to the still but Perry Franklin.'' The appellants objected to the argument of the prosecuting attorney and asked that the jury be instructed not to consider it for the reason that ''it was a direct reference to the failure of the defendants to testify.'' The court overruled the objection and appellants

duly excepted. The jury returned a verdict of guilty against the appellants and fixed their punishment at one year in the penitentiary. From the judgments of sentence based on these verdicts is this appeal.

1. The court did not err in refusing the appellants' prayers for instructions. These prayers were argumentative in form and calculated to mislead the jury. The phases of the case presented by the testimony which these prayers of the appellants were intended to submit were covered by the instruction which the court gave "along that line." The court told the jury that "the fact that the parties, if it is a fact, visited the still frequently, or any at all, are only circumstances that the jury may consider in arriving at their guilt." When this paragraph is read in connection with the succeeding paragraph, it is clear that the court told the jury in substance that they should take into consideration the testimony tending to show that the appellants visited the still frequently and all the facts and circumstances in evidence in determining whether or not the appellants were guilty of the crime charged.

Learned counsel for appellants contend that the court instructed the jury in the first paragraph of the instruction to find the defendant guilty. That paragraph might have been more happily phrased if the attention of the court had been drawn to the phraseology to which the appellants' counsel now for the first time urge a specific objection. The instruction was not inherently erroneous. It was correct to tell the jury that if the appellants frequently visited the still this was a circumstance which the jury might take into consideration in determining the issue as to whether or not the appellants were guilty of the crime charged. The language used by the court was tantamount to so instructing the jury, and, when the instruction is considered as a whole, and in connection with the remarks of the court, it is evident that such was the court's purpose. If the appellants believed that the in-

struction was susceptible of the construction which they now give it, it was their duty to call the attention of the court to such particular construction by specific objection. This they did not do, and the prayers they presented do not have that effect. *St. L., I. M & S. Ry. Co.* v. *Holmes,* 88 Ark. 181; *St. L., I. M. & S. Ry. Co.* v. *Dallas,* 93 Ark. 209; *St. L., I. M. & S. Ry. Co.* v. *Stacks,* 97 Ark. 405; *Thompson* v. *Southern Lumber Co.,* 104 Ark. 196, and other cases cited in 4 Crawford's Digest, § 110, p. 5027.

2. The remarks of the prosecuting attorney should not be construed as a comment upon the failure of the appellants to testify, and hence these remarks do not contravene the provisions of our statute to the effect that the failure of an accused to testify shall not create any presumption against him. Section 3123, Crawford & Moses' Digest.

In *Culbreath* v. *State,* 96 Ark. 180, the attorney representing the State, in his closing remarks, said: "Where was the defendant that day? He has never seen fit to say. He has not shown by any one where he was between the hours of 10 o'clock in the morning and 1:30 in the afternoon." Concerning these remarks we said: "Taking the whole statement together, we do not think it can fairly be construed as a comment or criticism upon the defendant's failure to testify in his own behalf, or as calling attention to that fact. It was merely an expression of the opinion of counsel that the defendant had not adduced evidence accounting for his whereabouts during the hours named."

In *Davidson* v. *State,* 108 Ark. 191, the appellant, Davidson, did not testify in his own behalf. The sister of the deceased testified to a certain conversation the appellant had with the deceased. The prosecuting attorney referred to this testimony in the following language: "You have a right to consider this conversation with Miss Barham in presence of her sister, gentlemen of the

jury, so unexplained by any one and unexplained and undenied by any one, and I call on them now to explain this conversation, if true." Concerning these remarks, we said: "It is not a comment or criticism on the defendant's failure to testify in his own behalf, but was the expression of the opinion of counsel that the testimony had not been rebutted, and it should be accepted as true."

Now, in the case at bar it was shown that there were two others besides the appellants that were seen leaving the mill and going in the direction of the still. Ben Davidson was one of the five. He was not on trial with the appellants, and was a competent witness in their behalf to prove that neither he nor the appellants were at the still on the occasion mentioned, if such were the facts. The appellants did call Perry Franklin, who was also designated as one of the five who were seen leaving the mill and going in the direction of the still, and he testified that he was not at the still on Friday. He was asked whether the appellants were at the still and answered, "Not that I know of."

In *Davis* v. *State,* 96 Ark. 7, the appellant was charged with the crime of abortion. Two witnesses had testified about the conversation appellant had with them concerning the alleged crime. The prosecuting attorney referred to this testimony in the following language: "He (the defendant) told Bently and Doctor Cunningham how he had administered the medicine to her to produce an abortion, and it is undisputed and undenied in this case, and he can not deny it." In that case the defendant did not testify. Concerning the above remarks, we said: "These remarks, we think, were but the expression of the opinion of the State's attorney as to the weight of the testimony of these two witnesses and could not fairly be construed to refer to the fact that the defendant had not testified in the case, and did not tend to create any presumption against him by reason of his failure to testify."

In the light of the above cases we are convinced that the remarks of the prosecuting attorney under review here should not be construed as a comment upon the failure of the appellants to testify, but rather as an expression of his opinion as to the weight of the evidence adduced on the part of the State to the effect that the appellants and two others left the mill and were seen at the still on a certain day mentioned by the witnesses. The purport of the argument couched in the remarks of the prosecuting attorney was that the testimony tending to show that these parties left the mill and were at the still on that day was undenied and uncontroverted. There were other parties besides the appellants said to be at the still on that day. One of these parties was called on by the appellants to testify, and he denied that he was there, but did not categorically deny that appellants were there. His testimony was to the effect that if the appellants were there he had no knowledge of the fact, and the other party said to be in the company of appellants on that occasion was not called on to testify. Hence the prosecuting attorney argued that the presence of the appellants at the still on that day, as proved by the State, neither the appellants nor any one else denied. If the appellants were not at the still as proved by the State, it was a fact which, as the circumstances disclosed, they might have adduced testimony tending to prove by other witnesses than themselves. In this respect the case differs from the cases of *Curtis* v. *State,* 89 Ark. 391, and *Hoff* v. *State,* 83 Miss. 488, upon which counsel for appellants relies.

In the first of those cases the appellant was charged with the crime of rape, and in the second case with the crime of seduction. The remarks of the prosecuting officer in those cases to the effect that the crimes charged were not denied were correctly held as referring to the failure of the defendants to testify because in cases of that character, aside from the general denial involved in a plea of not guilty, the only way that such offenses could

be denied would be by the defendants themselves denying the charges on the witness stand.

In the case of *Starnes* v. *State,* 128 Ark. 302, the appellant was charged with grand larceny. He did not testify at the trial, and in his concluding remarks the prosecuting officer said: "The defendant has not denied a single allegation of the indictment." In that case we held that any prejudice resulting from the remarks of the prosecuting attorney was removed by instructions to the jury, and we announced the general doctrine that it was improper and presumptively prejudicial for the prosecuting attorney to call the attention of the jury to the failure of the accused to testify. But because of the instructions of the trial judge removing any possible prejudice that might have resulted from these remarks we were not called upon to decide and did not decide in that case whether the remarks of the prosecuting attorney were in fact a comment upon the failure of the defendant to testify. The effect of the holding in that case is that if the remarks there objected to could be considered as obnoxious to the statute there was no prejudicial error in the ruling of the court in refusing to rebuke the prosecuting officer for having made them because the court eliminated all possible prejudice by explicit instructions in telling the jury that they could not infer guilt because of the defendant's failure to testify.

The case for decision on the record now before us is ruled by the cases of *Culbreath* v. *State, supra; Davis* v. *State, supra,* and *Davidson* v. *State, supra.* See, also, *Blackshare* v. *State,* 94 Ark. 548, 558.

We find no error. The judgments are therefore affirmed.