CARSON *v.* STATE.

4311                                   173 S. W. 2d 122

Opinion delivered July 12, 1943.

Appeal from Crittenden Circuit Court; *Walter N. Killough*, Special Judge; modified and affirmed.

*Wils Davis* and *Elton A. Rieves, Jr.*, for appellant.

*Guy E. Williams*, Attorney General, and *Earl N. Williams*, Assistant Attorney General, for appellee.

HOLT, J. Appellant, G. E. Carson, was charged with assault with intent to kill, convicted of assault with a deadly weapon, and his punishment fixed by the jury at a fine of $500 and imprisonment in the county jail for a period of twelve months. The victim of the assault was Herman Spears, deputy prosecuting attorney for Crittenden county.

For reversal appellant contends (1) that the evidence is not sufficient to support the verdict and "is so highly excessive that it evidences passion and prejudice" and (2) that the court erred in refusing his amended motion for a new trial on newly-discovered evidence.

Appellant makes no complaint as to the instructions, and, upon examination, we think they clearly and correctly covered the case.

1. The record discloses that appellant is a married man, 55 years of age, five feet, seven inches tall and weighs 155 pounds. For many years he has been lame and walks with a brace and cane. He owns and operates a farm of 960 acres, about four miles from Turrell, Arkansas. In connection with the farm he operates a small store, the building being twenty by forty feet.

The prosecuting witness, Herman Spears, is 41 years of age, six feet, one inch tall and weighs 175 pounds, with no physical defects. He is deputy prosecuting attorney for Crittenden county and lives at Turrell. He and appellant had been acquainted and friendly for about five years. On October 3, 1942, in company with some Mexican laborers, Mr. Spears went to appellant's store in an effort to adjust certain differences that had arisen between Mr. Carson and the Mexicans for compensation for cotton which they, the Mexicans, had picked for Mr. Carson. Mr. Spears' version of what

took place after they entered Mr. Carson's store is fairly abstracted in appellant's brief, from which we quote: "The Mexicans followed me in and the little Carter boy was in there. Mr. Watts, Mr. Aiken, Mr. and Mrs. Carson and some negroes were also there. Mr. Carson was standing in the office in the middle of the store leaning on a board which separates the store from the office and was facing the front. Mrs. Carson was in the east side of the office near the wall. He invited me to come in. His office was open. There is a little gate that goes into his office. I went behind the counter and walked up to about two feet in front of him. I folded my arms in the same manner that he had his and put them on the desk. We exchanged some words about it being a pretty day. I went into detail about what the Mexicans had told me about the cotton they had picked and that he didn't pay them. . . . He said he was not going to pay the Mexicans until he got his samples back from Memphis to see how much they had damaged his cotton, because they had not done the work like they should have. One of the Mexicans had a small book which he started to hand to me, and Mr. Carson made a lurch for it and David (one of the Mexicans) snatched it back and handed it to me. While I was holding the book, I said 'Here is the book, and let's have an understanding about what should be done.' I told him I was not interested in what he was paying them, and he reached over and grabbed the book out of my hand and kicked me in the stomach and the groins, cursing me. When I started to say something, he got his walking cane and hit me like that. I threw up my arm and he was hitting me from my elbow until my arm was black and blue for a week. While he was hitting me over the head, I was backing out. I backed eight or ten steps to a meat box and picked up a butcher knife. Mrs. Carson ran up and put her arms in front of him with her back to me. As she did that, I laid the knife down and started out of the store. Someone spoke and I turned around, and he was fumbling with his pocket and jerked out a pistol and he leveled it at me and said he was going to shoot me. When he got through cursing, I just looked at him until

he put the pistol in his pocket and I started out the door. I had taken two or three steps when I felt a stinging sensation on the back of my head, and heard something pop like a pistol shot. Blood was streaming down my face and I didn't know whether I had been shot or hit. I don't think the blow knocked me to the floor. The only sensation I felt about that was the floor coming up. The last thing I remember I was in the car on the outside. Mr. Percy Watts got in the car with me and we went to Dr. McVay's office. I stayed in bed that night, and the next day and the next night.'' He further testified that appellant cursed him and used violent, vulgar and profane language during the encounter.

Dr. McVay treated appellant immediately following the assault and found one wound a little to the back on the left side of his head and about three inches above his left ear, which appeared to have been caused by a heavy blow. It required five stitches to close the wound.

Two eye witnesses, Percy Watts and a boy, William Carter, tended to corroborate Mr. Spears except that part of his testimony as to the abusive and profane language which he testified Carson used.

It may be said here that counsel have failed to point to, or abstract, any testimony corroborating Mr. Spears' testimony that appellant used the violent and vulgar language, attributed to him, during the encounter.

We think it unnecessary to comment upon the effect of the above testimony. It speaks for itself.

After a careful review of all the testimony and giving to it its strongest probative effect in favor of the state (*Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50), we are of the opinion that it was sufficient to support a conviction for the crime of assault with a deadly weapon, as found by the jury. However, we must agree with appellant's contention that the punishment assessed is highly excessive, in the light of the testimony. This court has many times announced its power to reduce the punishment imposed upon a jury's verdict, and in circumstances such as are presented here. In *Blake* v. *State,* 186 Ark. 77, 52 S. W. 2d 644, this court said: ''One

of the leading cases is that of *Routt* v. *State*, 61 Ark. 594, 34 S. W. 262, in which a defendant had been convicted of robbing one Morgan of several hundred dollars. The court was of the opinion that, while the testimony established the fact that Routt had stolen Morgan's money, it did not suffice to establish the crime of robbery. . . . In discussing the power of the court to reverse the judgment of the trial court convicting appellant of robbery and to reduce the punishment to that appropriate for grand larceny, the court pointed out that 'the charge of robbery made against the defendant includes larceny,' and the judgment of imprisonment for robbery was set aside, and the case remanded with directions to the circuit court to sentence the prisoner for grand larceny.

"In discussing this power of the court, Justice Riddick there said: 'Our statute provides that "the Supreme Court may reverse, affirm or modify the judgment or order appealed from, in whole or in part, and as to any or all parties, and when the judgment or order has been reversed, the Supreme Court may remand or dismiss the cause, and enter such judgment upon the record as it may in its discretion deem just." Sand. & H. Digest, § 1064 (now § 2786, Pope's Digest). We have twice held that this statute applies to judgments in criminal as well as civil cases. *Simpson* v. *State*, 56 Ark. 8, 19 S. W. 99; *Brown* v. *State*, 34 Ark. 232.' . . .

"This power has frequently been exercised by this court in subsequent cases, and, while the practice usually followed is to reverse the judgment on account of the excessive punishment, unless the Attorney. General will consent that the trial court impose a lower sentence, that practice has not always been followed. The court, when it is thought proper to do so, has itself fixed the reduced punishment."

In *Petty* v. *State*, 76 Ark. 515, 89 S. W. 465, while holding that no error appeared in the trial of the cause, the court found the punishment to be unjust and excessive, and it is there said: "Lastly, it is contended with much earnestness that the evidence was not sufficient

to justify a verdict of murder in either degree. It seems to us very clear that this was not a premeditated, deliberate killing. It was the result of a sudden quarrel between the defendant and Pursur. But there was evidence that the defendant, angered by some indecent language used towards him by Pursur, commenced the assault upon him with a knife, and that Pursur only used the chair in an endeavor to protect himself. On the other hand, there was evidence tending to show that the affray was commenced by Pursur's striking the defendant with a chair. The jury evidently found that the defendant commenced the assault; and, although this assault was provoked by indecent language of Pursur, still provocation caused by words only is not sufficient to reduce a homicide from murder to manslaughter, *Vance v. State,* 70 Ark. 272, 68 S. W. 37. There is a conflict of evidence, and the finding of the jury as to the grade of the offense must stand. But, taking the whole evidence together, we are well convinced that this is not a very aggravated case of murder. It was done under heat of passion caused by very provoking language on the part of Pursur, and under circumstances which in our opinion show that the punishment assessed by the jury is excessive. While passion created by words only does not reduce a homicide from murder to manslaughter, still such provocation may well be considered in assessing the amount of punishment, and we believe, in view of all the evidence, that justice will be best subserved by reducing the punishment to five years imprisonment in the penitentiary.'' See, also, *Ball* v. *State,* 192 Ark. 858, 95 S. W. 2d 632.

We conclude, therefore, that justice will be best served in this case by allowing the fine of $500 to stand and reducing the jail sentence imposed from twelve months to ten days in the county jail.

2. On appellant's second assignment that the court should have sustained his amended motion for continuance on newly-discovered evidence, but little need be said. Attached to the motion were affidavits of W. T. Jones and his two minor sons, one 15 years of age and the other 13. They stated that they were present in the

store when the difficulty between appellant and Mr. Spears was going on, and saw and heard what transpired. The effect of their testimony, as outlined in the motion, however, is clearly cumulative and corroborative of that of other witnesses whom defendant introduced at the trial. The granting of such motion always addresses itself to the sound discretion of the trial court, and unless there appears to be an abuse of such discretion or an apparent injustice has been done, this court will not reverse for refusing to grant the motion. No abuse of discretion has been shown here. In the recent case of *Pierce* v. *State,* 201 Ark. 588, 145 S. W. 2d 714, this court reaffirmed its ruling in *Clements* v. *State,* 199 Ark. 69, 133 S. W. 2d 844, on this question, and said: ''It is thoroughly well settled that a new trial will not be awarded for newly-discovered evidence which is merely cumulative of other evidence offered at the trial.'' In the Clements case, *supra,* we said: ''The rule relative to motions for a new trial on the ground of newly-discovered evidence has been stated in *Hix* v. *State,* 189 Ark. 688, 74 S. W. 2d 966, as follows: 'The testimony set out in this motion is either cumulative of other testimony heard at the trial (*Dillard* v. *State,* 174 Ark. 1179, 298 S. W. 27) or tending to impeach such testimony (*Hayes* v. *State,* 169 Ark. 883, 277 S. W. 36).' And again in *Bourne* v. *State,* 192 Ark. 416, 91 S. W. 2d 1029, this court said: 'A supplemental motion for a new trial, on the ground of newly-discovered evidence, was filed and overruled. Such a motion addresses itself to the sound legal discretion of the trial court, and this court will not reverse except where an abuse of such discretion is shown or an apparent injustice has been done. *Ward* v. *State,* 85 Ark. 179, 107 S. W. 677; *Young* v. *State,* 99 Ark. 407, 138 S. W. 475; *Cole* v. *State,* 156 Ark. 9, 245 S. W. 303. No abuse of discretion is shown.' *Hulen* v. *State,* 196 Ark. 22, 115 S. W. 2d 860.''

With the modification above indicated, the judgment is affirmed.

The Chief Justice and McFADDIN and KNOX, JJ., dissent from the modification.