LESLIE BRUCE CROW *v.* STATE OF ARKANSAS

5502                                          455 S. W. 2d 89

Opinion delivered June 15, 1970

*C. E. Blackburn,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was charged by information with first degree murder. A jury found him guilty of involuntary manslaughter and requested the court to assess punishment. The court fixed a sentence of three years in the State Penitentiary and imposed a fine of $1,000. The fine was then suspended upon good behavior. From that judgment comes this appeal. For reversal appellant first contends that the evidence is insufficient and, therefore, the court erred in refusing to direct a verdict at the close of the State's case and, also, at the close of all the evidence. On appeal it is our duty to view the evidence in the light most favorable to the appellee and when so considered, if we find it substantial, we must affirm. *Reynolds* v. *State,* 211 Ark. 383, 200 S. W. 2d 806 (1947).

It was stipulated that the deceased was shot by the appellant. The State established, from the testimony of the State Medical Examiner who performed an autopsy on the deceased, that death resulted from a gunshot wound to the left arm which exited the arm and entered the neck. Ollie Rackley, brother of the deceased, testified that he met his brother between 5:15 and 5:30 p.m. at a store in Heber Springs and that his brother requested that he get in his truck with him, stating: "I know what Lee, George, and Crow [appellant] was into it about." Instead, Ollie entered his own truck and followed the deceased at a distance of about a quarter of a mile behind him. Because of the hills in the road, he was unable to keep his brother in sight at all times; but, upon reaching the crest of one of the hills, Ollie observed the deceased bending over, holding his stomach and falling from the running board of his dump truck. As we understand Ollie's testimony, appellant's car, with him sitting in it, was on the other side of the road about four feet from deceased's truck and facing

the opposite direction. Upon arriving at the scene, Ollie observed that appellant was bending over the deceased, and that the deceased was lying on the ground with his head under the truck next to its rear wheels. No weapon was observed about the deceased. Appellant gave a revolver to the officer at the scene of the crime and stated that the deceased "had come at him with a hammer" and that "he had to shoot him."

The State then rested, and the defense moved for a directed verdict, which motion was denied by the court. The court was correct. The evidence, viewed most favorably to the appellee, is more than sufficient to sustain the verdict. Further, appellant failed to stand on his motion and proceeded to testify and offer evidence in his own behalf. He thereby waived his motion for a directed verdict at the close of the State's case which results in the sufficiency of the evidence being determined from all the evidence introduced during the trial. *Smith* v. *State*, 241 Ark. 748, 410 S. W. 2d 126 (1967); *Reeves* v. *State*, 222 Ark. 77, 257 S. W. 2d 278 (1953).

Appellant testified and adduced other evidence that he and the deceased were friends; that they had been drinking beer which they had bought at a nearby town; that they got into an argument about who should pay for gasoline for a return trip; whereupon the deceased placed a hammer inside his pants and challenged appellant to a fight. Instead, appellant returned home with his two remaining passengers and got an axe (which he explained was for purposes of protection in the event that the deceased and his brothers would gang up on him) and placed it in the car. The threesome then started toward Bald Knob. On the way, they met the deceased who, according to the testimony of these witnesses, waved them to stop, got out of his truck, began cursing at appellant and started toward him with a hammer raised in his hand as if to strike. Appellant remained in the car, reached into his glove compartment and pulled out a gun. He then warned the deceased not to approach any further; and, when

the deceased lunged at him, appellant fired his weapon. On cross-examination, one of these witnesses testified that appellant and the deceased had previously agreed to meet out on the road.

Appellant further testified that when the deceased approached him with the raised hammer, he attempted to leave, but the car wouldn't start. He thereupon produced the gun and fired the fatal shot without aiming and with the intention of merely frightening his aggressor. He then threw his axe into the field and placed the deceased's hammer back into the truck.

Appellant requested a directed verdict, asserting that it was uncontradicted that he acted in self-defense and that there was no proof adduced by the State sufficient to sustain any verdict on any charge. Again the court correctly refused appellant's motion. The evidence in this case clearly presented a material question of fact and thereby precluded a directed verdict. *Ford* v. *State,* 222 Ark. 16, 257 S. W. 2d 30 (1953). The weight to be given the conflicting testimony and all reasonable inferences to be drawn therefrom were questions for the jury to determine. It was for the jury to accept or reject the credibility of the evidence tending to establish appellant's theory of self-defense. We think there is substantial evidence to support the verdict. See *Reynolds* v. *State, supra.* Therefore, we cannot find merit in appellant's contentions that the State failed to sustain its burden of proof and that the trial court erred in refusing to direct a verdict at the close of all the evidence.

Appellant lastly asserts that the trial court erred by instructing the jury, over his objection, that when one provokes or invites an attack, he must have withdrawn from the combat or made a bona fide effort to withdraw from the combat before invoking self-defense. He argues that the testimony clearly establishes that he was not the aggressor; that he did not provoke the affray; that he did in fact withdraw; and that, therefore, this instruction prejudicially misled the jury.

However, appellant has failed to carry this point forward in his motion for a new trial; and, therefore, it is not properly preserved for review on appeal. *Randall v. State, 239 Ark. 312, 389 S. W. 2d 229 (1965); Kesse and Pilgreen v. State,* 223 Ark. 261, 265 S. W. 2d 542 (1954). The purpose of a motion for new trial is to afford the trial court an opportunity to correct an alleged error. *State v. Neil,* 189 Ark. 324, 71 S. W. 2d 700 (1934).

Affirmed.