Scott LEONARD v. STATE of Arkansas

5687                                            476 S.W. 2d 807

Opinion delivered February 28, 1972

*Louis W. Rosteck,* for appellant.

*Ray Thornton,* Attorney General; *Milton Lueken,* Asst. Atty Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Scott Leonard was convicted of first degree murder in the killing of Fred Pack, Sr., the proprietor of a liquor store at Fifteenth and Chester Streets in Little Rock, on March 26, 1971. A jury fixed his punishment at life imprisonment. He asserts that there was error in admission of certain shotgun shells into evidence, in giving an instruction offered by the state and in denying two instructions requested by him, and contends that the evidence was insufficient to prove that the killing was wilful, deliberate or premeditated. We find no reversible error.

Fred Pack, Jr., was an eyewitness to the entire episode. He worked for his father at the liquor store. Four black males came into the store between 8:30 and 8:45 p.m. to buy some beer. They were Scott Leonard, his younger brother Arthur Leonard (called Lee Lee), and James and Lonnie Clay. When the younger Leonard took a carton of Champale from the beer box and set it on

the counter, Pack, Jr., asked him for an "I. D. card." Appellant testified that he intervened, saying that he, not his little brother, was buying the beer, and exhibited an "I. D. card." The younger Pack insisted on seeing the "I. D. card" of the younger Leonard, and when it was not forthcoming, Pack returned the carton of Champale to the beer box. The testimony as to what happened thereafter is conflicting.

Fred Pack, Jr., testified, and his version is as follows:

The four started arguing and making a disturbance, causing him to ask them to leave because other customers were present. One of the four picked up a bottle, slung it and hit some wine bottles, after which his father, who had been in the back of the store, came out. All four blacks had then left the store except for Arthur Leonard, and when his father ordered young Leonard to leave, the youth reached into his pocket. Pack struck Arthur Leonard's head with his fist on which he wore a ring. The younger Leonard had been cursing in the presence of female customers. Pack saw two of the four men walking toward the Village Square Apartments at Sixteenth and Chester. Young Pack was filling the beer refrigerator on the south side of the store when a black male, whom he identified as appellant, came to the front door of the store, stood against the door with the barrel of a shotgun inside the store, fired one shot which broke the glass in the beer box and struck Pack in the arm and side. As the witness started toward the telephone at the rear of the store, appellant fired again, striking Pack, Jr., in his back, and then fired a third shot which may or may not have struck the younger Pack. While this witness was calling the police and an ambulance, appellant fired two more shots, striking the senior Pack, who had been standing behind the counter reaching for his pistol, which was in his hand and cocked when he was shot. At that time the junior Pack was lying on the floor and had his own pistol out.

The police had been called, and Detective Larry Dill and Sergeant Parkman arrived at the scene only a few

minutes after the shooting. They found the senior Pack behind the counter and the younger Pack about three yards behind him. They found a pistol under each of the Packs, but neither weapon contained any spent rounds or powder odor or other evidence of having been fired. These officers found three 16-gauge shotgun shells on the floor just inside the door. Detective Dale Ridge picked up three purple 16-gauge spent shotgun shells at this spot. The officers then proceeded to Village Square Apartment 201, occupied by appellant, apparently on information from Joe Wesley, an undercover agent for the Alcoholic Beverage Control Board, that he had seen a man run out of the door of this apartment with a long barrel gun in his hand, while a lady was hollering for someone to stop him. When they arrived, they were admitted by a young lady in the apartment. When they explained what had happened and stated that they wanted to interview the people in the apartment, appellant stated that he had done the shooting and showed them a 16-gauge automatic shotgun under a bed. The officers saw and picked up more than one box of shells for a 16-gauge shotgun. These shells were strewn on the floor of the room between a closet and the hallway door.

Dr. Joseph Buchman examined Fred Pack, Sr., in the emergency room of Baptist Hospital, and later performed surgery and found that No. 5 or No. 6 shotgun pellets had penetrated his kidney. He said that the senior Pack died April 4, 1971, as the result of this wound. The empty shells found at the store were examined at the state police laboratory along with the shotgun by Officer Davidson. He testified that the three spent shells were fired from the shotgun and that two of them had contained No. 1 buckshot and the other high-powered No. 6. shot.

The court admitted into evidence the unexpended shotgun shells found in the apartment. There were two boxes, most of which were for a 16-gauge shotgun. Some of them contained No. 1 buckshot, and some were purple in color. Appellant contends that his admission that he did the shooting and had used the shotgun found in his apartment somehow made these shells inadmissible.

Those which were buckshot shells matched two of the empty shells found at the store. All were of the same brand. They were relevant to issues on intent and to show that appellant's supply of shells did not limit him to three shots. Appellant's admissions did not make them irrelevant.

Appellant complains that his requested instruction, defining the degrees of homicide and their elements and relating to defendant's burden, upon the killing being proved, should have been given instead of the one given by the court. His present argument is twofold, *i. e.*, first, the instruction given did not advise the jury that there was no burden upon the defendant to prove mitigating circumstances if the evidence on behalf of the state showed that the offense amounted only to manslaughter, and second, the instruction included the citation of  a decision of this court which was irrelevant and inappropriate to the issues in this case. No such objection as is now argued was made in the trial court. The objection to the giving of the instruction requested by the state was general only, but we cannot say that it was inherently erroneous. Manslaughter was clearly defined in the instruction given, and the jury was told that if it had a reasonable doubt as to the degree of the offense, it must give the benefit of that doubt to appellant, and that, if there was a reasonable doubt as to guilt of murder in the first degree, it should convict of murder in the second degree, but if there was reasonable doubt as to guilt of murder in the second degree it should convict appellant of manslaughter only. The jury was also told that the burden of proof was upon the state on the whole case to convince it of the defendant's guilt. Where specific words are omitted from an instruction but do not render it inherently erroneous, the court's attention must be specifically directed to the omission. *Lewis* v. *State,* 155 Ark. 205, 244 S. W. 458.

While it is preferable that this instruction be given in the words of the statute [Ark. Stat. Ann. § 41-2246 (Repl. 1964)] in a case where a finding of manslaughter is possible, we find nothing in the instruction given to mislead the jury by making it believe that the state did

not bear the burden of proving beyond a reasonable doubt that the offense was murder rather than manslaughter or that the appellant bore the burden of proving that the crime was manslaughter rather than murder. See *Hopson* v. *State*, 121 Ark. 87, 180 S. W. 485.

We cannot say that appellant's offered instruction constituted an objection to the omission he now complains of, because both the instruction given and the one offered were quite lengthy and covered the law governing numerous points. Such an offer does not adequately direct the court's attention to the fault in the comprehensive instruction of which complaint is now made. *McGuffin* v. *State*, 156 Ark. 392, 246 S. W. 478. In such cases, we have said that if the court's mind had been directed to the specific fault, the language would have been changed to meet the objection. We can say the same here. If appellant believed that the instruction was subject to misconstruction on the question of the burden of proof, it was incumbent upon him to call particular attention to this possibility, *Hopson* v. *State*, supra, and his request for an instruction did not have that effect. *Markham* v. *State*, 149 Ark. 507, 233 S. W. 676.

Although a citation of a court decision should not be given to a jury, we do not see how the citation included in the instruction could have possibly misled the jury in this case.

Appellant also contends that his requested instruction pointing out the effects of adequate cause upon the element of malice in distinguishing between murder in the second degree and manslaughter should have been given. We agree with the trial court that the instructions given distinguishing between express and implied malice and in defining the passion which would reduce a homicide from murder to manslaughter covered this request.

We have carefully reviewed the evidence and find it sufficient to support the jury's finding that the killing was wilful, deliberate and premeditated. When Scott Leonard returned to his apartment after the disturbance at the liquor store, he found Lee Lee armed with the

shotgun and in an angry mood. Scott took the shotgun from Lee Lee and proceeded down the block to the liquor store, where he stood at the door and fired into the store. He justified his actions by saying that Pack, Jr., fired at him and one of the Clay brothers as they left the store, and that he found his younger brother bleeding from wounds inflicted by the younger Pack's striking the youth with a pistol. He disavowed any intent to do anything other than "break a little glass" as revenge for the mistreatment he, his brother and other witnesses testified about. Although he professed to be so confused he didn't know what he was doing, he testified that when he got to the liquor store, he threw open the door, held it with his foot and shot into the place. But he also said that he was "breaking glass" in the beer refrigerator, at which Fred Pack, Jr., testified that he was standing. At least one shot fractured the glass on this refrigerator. Although he claimed he was not aiming the gun, he said that he was shooting at the beer refrigerator and the bottles on a shelf. He admitted seeing the younger Pack standing by the beer box when he fired. Appellant claims that the elder Pack did not engage in the dispute or altercation and that there could have been no motive for shooting at him, so the requisite intent is lacking. Appellant's claim that shots which struck the elder Pack might have ricocheted off some object would not relieve appellant of guilt, if he intended to kill the son rather than the father. *Henley v. State*, 210 Ark. 759, 197 S. W. 2d 468; *Clingham v. State*, 207 Ark. 686, 182 S. W. 2d 472; *Lillard v. State*, 236 Ark. 74, 365 S. W. 2d 144.

In any event, the jury accepted young Pack's version of the incident and it, with other evidence in the case, constituted sufficient evidence to support a finding of first degree murder.

The judgment is affirmed.