JIMMIE DALE McCRAY *v.* STATE OF ARKANSAS

CR 73-10                                   494 S.W. 2d 708

Opinion delivered May 28, 1973

*Howard, Howard & Howard,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Frank B. Newell,* Deputy Atty. Gen., for appellee.

FRANK HOLT, Justice. A jury found appellant guilty of first degree murder as charged by an information and his punishment was assessed at life imprisonment. From a judgment on that verdict comes this appeal. Appellant

first contends for reversal that the court erred in failing to direct an acquittal at the close of the state's case or to reduce the charge to second degree murder or manslaughter. The court was correct. On appeal, of course, it is our duty to view the evidence in the light most favorable to the appellee to determine if there is substantial evidence adduced to support a verdict. *Crow* v. *State,* 248 Ark. 1051, 455 S.W. 2d 89 (1970).

The state adduced evidence that the deceased, Rose Rhomes, died from five gunshot wounds from a .38 caliber weapon. Four bullets struck her in the chest and one of these wound reflected powder burns. Another bullet entered and exited from her left leg indicating she was in a prone position. She was acquainted with the appellant since she "used to go with" him. Although there were no eyewitnesses to the actual shooting, the state established that appellant was alone in a room with the decedent in her apartment when the shooting occurred. Witnesses heard an argument between the two and some "scuffling" which was followed by the gunshots. The victim's sister heard the deceased exclaim "McCray, go on before you shoot, blow my head off." She testified that after the shooting the appellant fled out the door and across the yard. Another witness testified that the appellant had a .38 caliber pistol in his pocket on the day of the shooting; that decedent didn't own a pistol; and the decedent told him as she was dying that appellant shot her. No weapon was found in a search of the premises.

This recited evidence, when viewed most favorably to the state, is amply sufficient to raise a material fact issue with regard to all the elements of first degree murder and, therefore, constituted a submissible issue for the jury. Furthermore, appellant failed to stand on his motion for a directed verdict and proceeded to testify and offer evidence in his own behalf. "He thereby waived his motion for a directed verdict at the close of the State's case which results in the sufficiency of the evidence being determined from all the evidence introduced during the trial." *Crow* v. *State, supra.* According to the appellant, the decedent attempted to shoot him and he was trying to wrest the gun from her. It was for the jury to accept or reject his version.

We must, however, agree with appellant's assertion that the trial court erred in refusing to allow appellant to show previous inconsistent statements of a state witness by introducing into evidence a written statement made to the police and signed by the witness. "It is a well-established rule that when a witness has testified to material facts on the trial of a cause, any acts done or declarations made by him, which appear to be inconsistent with his statements on the stand, are competent by way of contradiction, and to enable the court or jury trying the case to ascertain what weight should be given to his testimony." *St. Louis, I. M. & So. Ry. Co.* v. *Faisst,* 68 Ark. 587, 61 S.W. 374 (1900). See, also, *Shands* v. *State,* 118 Ark. 460, 177 S.W. 18 (1915).

The witness testified about certain specific details relating to the shooting. According to her, she observed appellant go into the room, heard the decedent say "Mc-Cray, go on before you shoot, blow my head off," and afterwards the shots. However, before the trial she gave a statement to the police in which she said among other things "I did not see any of the shooting or know any-thing about it." The statement was signed and initialed by her. On cross-examination a proper foundation was laid for impeachment. Although she was permitted to read aloud before the jury the above quoted sentence, the entire statement, which also contained other language of a contradictory nature, was not permitted into evidence by the court as appellant requested. The court's refusal was erroneous, whether the signed statement was the original or a copy, since the statement contained declarations inconsistent with the witness' statements on the stand. It was competent for contradiction purposes and to aid the jury in ascertaining the weight to give her testimony. The partial reading of the statement did not render the error harmless. In *St. Louis, I. M. & So. Ry. Co.* v. *Faisst, supra,* we said:

"Nor can we say, as matter of law, that, because the witness admitted signing the affidavit, and admit-ted on the stand that the affidavit contained the contradictory statement, therefore, appellant was not prejudiced by the ruling. By not permitting it to be read as evidence, the jury were prevented from examining the writing. The appellant was deprived of the

right to have it considered as evidence in the case, and its counsel could not refer to or discuss it in their argument. All of this was exceedingly important to appellant, and the ruling of the court refusing it was prejudicial error."

We cannot say with confidence, in the case at bar, that the error was not prejudicial.

The court properly refused to admit into evidence the deceased's police criminal record to show her reputation in the community as a dangerous person and one with a violent disposition. As appellant acknowledges, a violent nature is properly shown by proof of the deceased's general reputation and not by specific acts of violence or misconduct. *Sanders* v. *State,* 245 Ark. 321, 432 S.W. 2d 467 (1968).

For the error previously indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

HARRIS, C.J., dissents.