Floyd D. STOUT *v.* STATE of Arkansas

CR 77-239                                        565 S.W. 2d 23

Opinion delivered May 1, 1978
(Division I)

*John Barry Baker*, Public Defender, for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Floyd D. Stout was found guilty of criminal attempt to commit capital murder and sentenced to life imprisonment. See Ark. Stat. Ann. § 41-701, -1501 (Repl. 1977). He relies upon one point for reversal, which really encompasses two separate issues. He first challenges the sufficiency of the evidence to support the verdict. We find it to be sufficient.

Stout was charged with having engaged in conduct that would have constituted the offense of capital murder and which constituted a substantial step in a course of conduct intended to culminate in the commission of capital murder. Specifically, he was charged with the premeditated and deliberated purpose of causing the death of Frank Upton, a police officer acting in the line of duty, by shooting at the officer with a firearm.

Appellant's attack upon the sufficiency of the evidence is directed primarily to the issues of premeditation, deliberation and intent. He says that the record is devoid of proof of premeditation, deliberation and intent. The episode arose from an attempt by the police officer, who had stopped Stout for a traffic violation, to place him under arrest on a charge of driving while under the influence of intoxicants. When the officer told Stout he was under arrest, Stout pulled a pistol and told the officer to freeze. As usual in such cases, there are discrepancies, conflicts and inconsistencies in the testimony of the witnesses. Their resolution was for the jury. *Scott* v. *State,* 254 Ark. 271, 492 S.W. 2d 902; *Murchison* v. *State,* 249 Ark. 861, 462 S.W. 2d 853. Since the jury resolved them against appellant, we must view the evidence in the light most favorable to the state and affirm if there is any substantial evidence to support the jury's finding. *Witham* v. *State,* 258 Ark. 348, 524 S.W. 2d 244; *Shipman* v. *State,* 252 Ark. 285, 478 S.W. 2d 421. Viewed in that light, the testimony showed:

Stout was operating a motorcycle that belonged to Robert Blevins on College Avenue in Fayetteville, at some time between 12:00 p.m. and 1:00 a.m. There was no license on the cycle and the tail light was inoperable.

He had been drinking. (According to his testimony, he had consumed three half-pints of whiskey and about a half dozen 16-oz. cans of beer over a four-hour period.) He had a whiskey bottle in his pocket in which about two shots were left. He was armed with a .38 caliber revolver ,he had stolen from a store he had burglarized in Fayetteville. He carried the weapon for protection, because he "gets in a lot of places and in a lot of positions." He was on parole from Indiana on a sentence for second degree burglary and his parole extended for an additional two and one-half years. He had come to Arkansas about three weeks earlier to get away from some trouble in Indiana. Officer Upton was patrolling College Avenue alone in a police car near Lafayette Street when he met the motorcycle, which appeared to be weaving and driven a "little strangely." When he noticed that it had no license and no tail light, he turned to pursue it. Stout saw the police car and knowing that he had no license and that the tail light was not in proper condition, he pulled over, put his motorcycle on the kick stand, removed his leather gloves and helmet, and placed his helmet on the "bike." Officer Upton saw that the motorcycle had been stopped, so he stopped his patrol car behind it. As Upton was approaching the motorcycle, he saw Stout "hunkered" or "squatted" down beside the motorcycle, as if he were attempting to work on it, and watching the approach of the police car. Upton got out of the police car and walked toward the motorcycle. As he approached it from Stout's rear, Stout straightened up. The officer asked if Stout had a driver's license. Upon receiving a negative response, Upton asked if Stout had any identification at all and again received a negative response. Upton then asked Stout what his name was, but Stout just mumbled. Upton thought Stout was saying "Lloyd." Upton saw the bottle of whiskey in Stout's right coat pocket and jerked it out. It appeared to the officer to be a whiskey bottle and he assumed that it contained alcohol. At Upton's request Stout took a balance test. Upton then requested that Stout take an intoximeter test and placed him under arrest for driving while under the influence of intoxicants. Stout pulled his pistol and told the officer to "freeze." He did this because he did

not want to be arrested and because of other things, such as his parole in Indiana and his coming to Arkansas to get away from some trouble there. Upton said that when he was suddenly commanded to stand still, he saw Stout's gun pointed at him and tried to get it away from Stout by grabbing the barrel but when he was unsuccessful and it appeared that Stout had made a "pass" at taking Upton's weapon, Upton turned, started to walk away, and, realizing that Stout was not going to run away, broke into a run himself, seeking to get behind the police car. As he started to turn around the car, he felt something strike his right hand which was on the butt of his own pistol, and he felt his gunbelt gouge him in his side and knew he had been shot. Using his right hand, he drew his pistol, the butt of which had been shattered by the shot, raised it, and facing Stout, saw that Stout was still pointing the revolver at him. Upton's right hand wouldn't function, so he shifted his weapon to his left hand and fired one shot, just as Stout ran. Stout had fired a second shot at Upton before the officer returned the fire. A bullet fired from Stout's gun was found on the parking lot of a service station across both College Avenue and Lafayette Street from the scene, where it had fallen after having struck and broken a plate glass window in the service station. This would have been in Stout's line of fire. Stout testified that he had never said that he did not know what was going on, but that he had a tendency to do violent things when he was drinking and had been drunk to the extent that he was doing things he would not normally do. Upton was polite to Stout, had never threatened or harassed him and was only doing his job. The entire episode took place in a period of two to five minutes. The bullet which struck Upton's right hand entered a knuckle and exited through his palm. Splinters from the butt of the gun were driven into the palm and had to be removed by surgery. If the bullet had not been deflected by the gun butt, it would have gone into Upton's stomach and probably his kidneys.

Stout admitted firing the two shots, but said that he was running away from the officer when he did so. He admitted

that the officer was not coming toward him when these shots were fired.

Appellant relies upon his retrospective subjective statement that he had no intention of shooting the officer, that the time frame was too short to permit any premeditation or deliberation, that his disavowal of intention to shoot the officer is supported by the fact that he could have shot Upton instead of commanding him to stand still. Upton's testimony that Stout appeared to want to disarm the officer, and appellant's own testimony that he fired the two shots over his shoulder as he was running away when he saw the officer reaching for his own pistol. He also argues that, if he had intended to shoot the officer, he had ample opportunity to fire more than one shot as the officer retreated. These arguments were appropriate when they were addressed to the jury, as they undoubtedly must have been.

The jury certainly had a right to believe that Stout intended to go to any extreme to prevent the officer from taking him to the police station under any circumstances and that, when he was unsuccessful in disarming the policeman, who refused to "freeze" at appellant's command, the decision to take the officer's life was reached, and might well have succeeded but for the fortuitous circumstance that one bullet was deflected by the policeman's gun butt and the other strayed from the target.

Premeditation and deliberation and intent may all be inferred from the circumstances, such as the character of the weapon used, the manner in which it is used, the nature, extent and location of the wounds inflicted, the conduct of the accused and the like. *Hamilton* v. *State,* 262 Ark. 366, 556 S.W. 2d 884; *Turner* v. *State,* 258 Ark. 425, 527 S.W. 2d 580; *Wilson* v. *State,* 258 Ark. 110, 522 S.W. 2d 413, cert. den. 423 U.S. 1017, 96 S. Ct. 451, 46 L. Ed. 2d 388; *Figeroa* v. *State,* 244 Ark. 457, 425 S.W. 2d 516.

As appellant concedes, premeditation and deliberation can be instantaneous, as it may well have been in this case. *Shipman* v. *State,* 252 Ark. 285, 478 S.W. 2d 421. The intent to kill need not have existed for any appreciable length of time and may also be conceived in a moment. *Ballew* v. *State,* 246

Ark. 1191, 441 S.W. 2d 453; *Cook* v. *State,* 225 Ark. 1003, 287 S.W. 2d 6. The evidence of intent, premeditation and deliberation was sufficient, since the jury accepted the state's version of the incident. See *Ford* v. *State,* 249 Ark. 695, 460 S.W. 2d 749; *Young* v. *State,* 158 Ark. 644, 243 S.W. 962.

Appellant contends that the circumstances do not exclude every other reasonable hypothesis other than that appellant acted with premeditation and deliberation. Ordinarily, this determination is for the jury, particularly on the question of the reasonableness of another hypothesis, if the evidence does more than give rise to a suspicion and does not leave the jury solely to speculation and conjecture in determining whether other hypotheses are excluded. *Upton* v. *State,* 257 Ark. 424, 516 S.W. 2d 904; *Abbott* v. *State,* 256 Ark. 558, 508 S.W. 2d 733. On appellate review of the question, we view the evidence in the light most favorable to the state. *Abbott* v. *State,* supra. When we do so, and remember that the jury rejected appellant's version, the evidence is sufficient. See *Leonard* v. *State,* 251 Ark. 1090, 476 S.W. 2d 807; *McCray* v. *State,* 254 Ark. 601, 494 S.W. 2d 708.

Appellant argues that we should modify the judgment by entering a judgment of guilt of a lesser offense, but what we have already said disposes of that contention. He also argues that we should reduce the punishment, because the jury overlooked a mitigating circumstances, i.e., appellant's intoxication. Even though appellant was arrested for driving while under the influence of intoxicants, the officer testified that there was some question about the matter, and this seems to have been the reason he was anxious to have the intoximeter test. He said that Stout seemed to know what was going on at the time. This testimony was corroborated by appellant himself, who testified that he had never said that he did not know what was going on and that he did know what was going on, but panicked. We are not convinced that the jury disregarded a mitigating circumstance.

Appellant also relies upon such cases as *Carson* v. *State,* 206 Ark. 80, 173 S.W. 2d 122, which are contrary to our decision in *Osborne* v. *State,* 237 Ark. 5, 371 S.W. 2d 518, and for that reason not authoritative. We have made it quite clear that we are not empowered to reduce a sentence within

statutory limits in the absence of error in the proceeding, simply because we might think the sentence to be excessive. See *Abbott* v. *State*, supra. Not only would doing so be an act of clemency, it would be a substitution of the judgment of a group of appellate judges who had not seen or heard the parties and witnesses for the judgment of a jury and trial judge who had. This is not to say that we have no power to reduce the punishment where we can say that it resulted from passion or prejudice or was a clear abuse of the jury's discretion. *Collins* v. *State*, 261 Ark. 195, 548 S.W. 2d 106, cert. den. 429 U.S. 808, 98 S. Ct. 231, 54 L. Ed. 2d 158. We are unable to say that this is such a case.

If, as the jury found, Stout fired his weapon at a retreating police officer, who was merely performing his duty and was admittedly polite to the accused, with the intent to kill him, we cannot say that the punishment resulted from passion or prejudice or that the jury abused its discretion to impose a sentence for a term of five to fifty years or life imprisonment. Ark. Stat. Ann. § 41-703 (1), — 901 (a) (Repl. 1977). The sentence is not so wholly disproportionate to the crime as to shock the moral sense of the community. If either shot fired by appellant had the effect the jury found that Stout intended, the question on punishment would have been between death or life imprisonment. Ark. Stat. Ann. § 41-1501 (Repl. 1977).

We have reviewed other objections made by appellant and find none which merit discussion.

The judgment is affirmed.

We agree...HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I agree with the result reached in this case. However, I must disagree with some of the language in the majority opinion.

The majority uses our decision in *Collins* v. *State*, 261 Ark. 195, 548 S.W. 2d 106 (1977); *cert. denied,* 429 U.S. 808,

98 S. Ct. 231, 54 L. Ed. 2d 158, as authority that we retain the power to reduce an excessive sentence caused by passion or prejudice. It may be that we retain that power but I know of no instance where we have exercised it. We have reduced sentences only because of some legal error. See, for example, *Giles* v. *State,* 261 Ark. 413, 549 S.W. 2d 479 (1977).

Also, the majority is critical of appellant's use of one of our decisions which was apparently overruled by *Osborne* v. *State,* 237 Ark. 5, 372 S.W. 2d 518 (1963). I cannot fail to point out that the opinion in *Collins* also used as authority cases which were just as apparently overruled by *Osborne* v. *State, supra.* See *Collins, supra* at 217.

I feel the better appellate practice is to simply reduce an excessive sentence and say so rather than seek some "legal error" as an excuse to reduce a sentence. Searching the wilderness for error does more harm to our system, in my opinion, than an honest admission by an appellate court that a clearly excessive sentence must be reduced as a matter of justice and fairness; or, as I stated in my dissent to *Collins, supra,* at 228:

> It is not a matter of clemency to correct an injustice; it is simply the law at work.