Booker T. WESTBROOK *v.* STATE of Arkansas

CR 78-161                                    580 S.W. 2d 702

Opinion delivered May 14, 1979
(In Banc)

*Julius D. Kearney,* for appellant.

*Steve Clark,* Atty. Gen., by: *E. Alvin Schay,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The Chief of Police for the City of Dermott, Arkansas, was shot and killed on August 29, 1977, while attempting to place the appellant under arrest. The record does not show what appellant was to be charged with but apparently it was for an offense of some type for which no warrant had been issued. During the arrest process the decedent and appellant struggled for possession of decedent's pistol which was discharged once or twice before appellant obtained possession after which time he shot the chief one or more times. The charges were filed in Chicot County. Appellant moved for a change of venue and the court, acting without a hearing, changed the venue to Drew County. Dermott is approximately midway between Lake

Village and Monticello, the county seats of Chicot and Drew Counties. Appellant was tried in Drew County Circuit Court on April 21, 1978, and received the death penalty. Appellant sets out 14 points in his appeal from the verdict and sentence. We will discuss each point raised on appeal but more than one point may be discussed under the same heading.

## I.

## THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR AN INDEPENDENT PSYCHIATRIC EXAMINATION BY A PRIVATE PSYCHIATRIST.

The matter of whether an accused is entitled to a psychiatrist of his own choosing when his defense to the charge is that of insanity has been decided by this Court several times. The most recent case is *Andrews v. State*, 265 Ark. 390, 578 S. W. 2d 585 (1979). In the *Andrews* case we were asked to declare Ark. Stat. Ann. § 41-601 (Repl. 1977) unconstitutional. It was argued that since the defense of insanity is an affirmative defense that it placed the burden of proof on the defendant in violation of his constitutional rights. We have reviewed the authorities cited by appellant in support of this argument and find that such argument is invalid in this case. It is true that the defense of not guilty by reason of insanity placed the burden of proof of such defense upon the defendant. Because the defendant is required to affirmatively prove certain defenses, it does not follow that the state is relieved of the overall burden of proving the guilt of the accused beyond a reasonable doubt. The state has that burden in the beginning, throughout the trial, and at the end. In support of this position we cite *Hale v. State*, 246 Ark. 989, 440 S.W. 2d 550 (1969); *Grissom v. State*, 254 Ark. 81, 491 S.W. 2d 595 (1973); *Barber v. State*, 248 Ark. 64, 450 S.W. 2d 291 (1970); and *Maxwell v. State*, 259 Ark. 86, 531 S.W. 2d 468 (1976).

## II.

## THE TRIAL COURT ERRED IN DENYING APPELLANT A HEARING ON THE RECORD BEFORE RULING ON HIS MOTION FOR A CHANGE OF VENUE.

Appellant timely moved for a change of venue. The trial court scheduled a hearing on this motion; however, when appellant appeared to argue the motion the trial court was engaged in the trial of a civil case. During a break in the civil trial the court informed appellant and the state that he was changing the venue from Chicot County to Drew County and therefore there would be no need for a hearing. Apparently the court felt the granting of the motion negated the necessity of a hearing. Had appellant protested the change to Drew County, or asked for another change, he might have been entitled to have us consider it on appeal. It is too late to argue it after the trial. It does not follow that a change of venue would have been granted upon a second request because it is still a matter which is left to the sound discretion of the trial court. On the other hand, it may well have been that appellant would have been able to convince the court that the trial should have been held in one of the other counties in the district. The other four counties, Ashley, Bradley, Cleveland and Dallas, are more distant from Dermott than either Lake Village or Monticello. In support of our position that appellant would have been entitled to a hearing on his motion for a change of venue we rely upon *Walker* v. *State*, 241 Ark. 300, 408 S.W. 2d 905 (1966); *Chitwood* v. *State*, 210 Ark. 367, 196 S.W. 2d 241 (1946); *Wood* v. *State*, 248 Ark. 109, 450 S.W. 2d 537 (1970); and *Williams* v. *State*, 160 Ark. 587, 255 S.W. 314 (1923). Under the circumstances, no prejudicial error was committed.

### III.

### THE TRIAL JUDGE ERRED IN DENYING APPELLANT'S MOTION FOR DISQUALIFICATION OF JUDGE AND IN DENYING APPELLANT A HEARING THEREON.

The court denied appellant's motion for disqualification without a hearing. The trial judge and his son were allegedly listed on their law office door as attorneys in the same firm. Additionally, the motion argues that the son, who serves as court reporter for his father, actually conducted a part of the initial investigation of this case as deputy prosecuting attorney.

Obviously, the consent of the parties was not obtained to allow the presiding judge to retain jurisdiction to hear this case. Without a hearing there is nothing upon which we can base our opinion except the allegations contained in the motion to disqualify. The motion contained reasons which, if true, would require the judge to recuse himself.

Although the burden was upon the appellant to show cause for disqualification of the presiding judge, he could hardly do so without the opportunity to be heard on his motion. We held in the case of *Byler* v. *State*, 210 Ark. 790, 197 S.W. 2d 748 (1946), that because the judge's wife was a cousin of the victim the judge was disqualified because of such relationship. This fact was not known at the time of the *Byler* trial. However, in the present case it was known and a motion was made but never heard. Therefore, we feel it was error for the judge to fail to hold a hearing to determine whether he should remove himself from the case. We are not holding as a matter of law that the judge was disqualified but rather that, in view of the serious allegations made in the motion, a hearing should have been held. We agree with the reasoning in *SCA Services, Inc.* v. *Morgan*, 557 F. 2d 110 (1977), wherein it was held that a relative of the presiding judge being a member of the firm which appeared as counsel of record for one of the parties should have recused himself even though the relative had no actual personal relationship with either of the parties.

## IV.

THE TRIAL COURT ERRED IN FAILING TO FIND APPELLANT UNFIT TO PROCEED OR TO ACQUIT HIM DUE TO MENTAL DISEASE AT THE HEARING ON THOSE ISSUES.

Again the judge should have made a finding after the hearing held for appellant on the motion to determine whether appellant was unfit to proceed to trial due to mental disease or defect. The evidence certainly raised a question which should have been ruled on by the court. We recognize the burden is upon the accused to establish that he was suffering from a mental disease or defect to the degree which would require him to be acquitted. In this case two psy-

chiatrists testified, sometimes equivocally, that appellant was capable of assisting in his defense and that he understood the nature and extent of his actions. However, another psychiatrist and a psychologist testified that he was definitely suffering from mental disease to the extent that he could not assist in his defense nor did he realize the nature of his activities at the time of the incident in question. No witness testified that appellant would be rated in a higher category than a moron. For these reasons we believe the trial court should have made a determination of appellant's mental condition and whether or not he was competent to proceed to trial. This matter will be discussed further in conjunction with another point.

We held in *Deason v. State,* 263 Ark. 56, 562 S.W. 2d 79 (1978), that the burden of proving incompetence was on the defendant. In *Deason,* the defendant accepted the report of the psychiatrist without objection and entered a plea of guilty. There we held that the court was under no duty to hold a hearing sua sponte at the time of the sentencing. However, here the appellant does not accept but strongly disputes reports of the psychiatrists and requested a hearing. Although a hearing was held, the court never made any finding or ruling, other than he would let the jury decide the matter. We think it was proper that the trial court should have made a specific ruling at this stage of the trial.

## V.

## THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT A CONTINUANCE WHILE HE SOUGHT TO SECURE RECORDS AND A WITNESS FROM THE STATE HOSPITAL.

The basic defense of appellant was that he was not guilty ot the crime charged by reason of mental disease or defect. Ark. Stat. Ann. § 41-601 (Repl. 1977) states:

(1) It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

(2) As used in this Code (§§ 41-101 — 41-3110) the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(3) When a defendant is acquitted on grounds of mental disease or defect the verdict and judgment shall so state.

The burden of proof required by this defense is a preponderance of the evidence. Thus, it is clear that the proof of this affirmative defense is much less than the burden required of the state in the overall case which is that of proof beyond a reasonable doubt. However, it is reasonably expected and indeed demanded that the state and its witnesses will not intentionally mislead the defense or refuse to furnish properly requested information. Although the appellant was presumed to be sane, he could show, by a preponderance of the evidence, that he was not guilty because of mental disease or defect.

Appellant insists he was denied crucial evidence to aid in his defense when he was not furnished the full records of the state hospital relating to the two prior commitments to the state hospital in 1972 and 1974. The record discloses that appellant filed a motion on October 4, 1977, to obtain these particular records. He was entitled to this information as a matter of law, as set out in Ark. Stat. Ann. § 41-605 (8) (Repl. 1977). This motion was granted on paper but appellant never received the records. On December 5, 1977, he was again told by the court that the information would be forthcoming. In fact, an order was issued to the state hospital to furnish appellant with the requested information. February 6, 1978, the request was renewed for these records. February 8, 1978, appellant filed a discovery request for these same records. On February 22, 1978, Dr. Whitehead and Dr. Oglesby appeared and gave testimony in response to a subpoena duces tecum but they failed to bring the missing records as required by the subpoena. On April 14, 1978, appellant's counsel drove to Little Rock and was told by Dr. Whitehead that the other records did not exist but he could check at Benton where the records were supposed to be kept. Counsel was advised by the Benton unit that the records were

probably in Little Rock. On this same date Dr. Whitehead told counsel that Dr. Buford, the treating physician or psychiatrist for the 1972 and 1974 commitments of appellant, was no longer there and might be dead. In truth, Dr. Buford was still employed as a colleague of Dr. Whitehead. The request for the missing records was renewed on April 18, 19 and 20, 1978. On this date, and previously, appellant had requested a continuance for the reason that he was not prepared fully to defend this action. The reason given was that he had not been furnished the records which had been so often requested by the appellant.

Due to the nature of the defense we feel it was necessary that appellant have these records, if they exist, in order to fully prepare his defense. We note that Dr. Buford allegedly testified before the same prosecutor and trial judge on April 16 or 17, 1978. Even if the prosecuting attorney did not have the material requested in his possession, there was no reason why more compulsory processes could not have been utilized to obtain these vital records. It may be that something in these records would have enabled appellant to furnish stronger proof on his behalf. During trial the court reporter stated he would take care of getting the requested records to defense counsel. Perhaps he thought he could, but he did not.

We held in *Williamson* v. *State,* 263 Ark. 401, 565 S.W. 2d 415 (1978), that appellant was entitled to receive the tapes from which witnesses' statements had been transcribed and furnished by the prosecutor to the defense. The tapes were held to be the best evidence, and we feel the notes in this case fit into the same category. In *Williamson* we held the tapes were needed for the purpose of comparing the transcribed statements with the oral statements as recorded on the tapes in order to check for possible errors. In the present case it may have been that the notes would reveal that Dr. Buford, who also saw appellant during his 1977 confinement at the state hospital, would have been a favorable witness for the defense. The record does disclose that Dr. Buford had previously diagnosed the appellant as paranoid schizophrenic and placed him on unusually heavy dosages of antipsychotic drugs.

We do not feel this case is controlled by the facts in

*Thacker* v. *State,* 253 Ark. 864, 489 S.W. 2d 500 (1973), where we held the trial court did not abuse its discretion in refusing to grant a continuance because of the absence of witnesses subpoenaed by the defendant. In *Thacker* the court granted a hearing on the motion but the defendant refused to testify in support thereof. In the present case the materiality of the records has been clearly shown and the need for them was apparent. We recognize our prior holding that the granting of a continuance is within the sound judicial discretion of the trial court. *Brown* v. *State,* 252 Ark. 846, 481 S.W. 2d 366 )1972); *Nash* v. *State,* 248 Ark. 323, 451 S.W. 2d 869 (1970); and *Walker* v. *State,* 100 ARk. 180, 139 S.W. 1139 (1911).

VI.

THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTIONS ON LESSER INCLUDED OFFENSES AFTER ALL THE ELEMENTS OF LESSER OFFENSES WERE ELICITED.

Appellant was charged under Ark. Stat. Ann. § 41-1401 (1) (b) (Repl. 1977) with the crime of capital murder which requires proof that the actions of a person be premeditated and deliberated in causing the death of a law enforcement officer. There are few, if any, offenses which shock and arouse a community so much as the crime charged here. Passion and prejudice often arise in the minds of our citizens without their actual knowledge of its existence. We have previously considered this in the earlier portion of this opinion where we dealt with disqualification and change of venue. This case went to the jury with only one possible conviction — capital murder. We believe the jury should have been afforded the opportunity to consider lesser included sentences. As we view the evidence as presented at the trial, it warranted the court to give instructions down through manslaughter. This would include murder in the first degree, Ark. Stat. Ann. § 41-1502 (Repl. 1977), murder in the second degree, Ark. Stat. Ann. § 41-1503 (Repl. 1977), and manslaughter, Ark. Stat. Ann. § 41-1504. At the new trial it may develop that the facts will not require all of these instructions.

We are not unmindful of our decisions in such cases as *Caton & Headley* v. *State,* 252 Ark. 420, 479 S.W. 2d 537

(1972), which deal with cases where the evidence presented at the trial mandates either a conviction of the offense charged or acquittal. However, when the evidence presented shows the accused might be convicted of a lesser offense than that charged or of an offense which is necessarily included in the offense charged, it is the duty of the court to present instructions to embrace all degrees of a particular offense, and included offenses, to which the evidence is applicable. We stated in *Walker* v. *State,* 241 Ark. 300, 408 S.W. 2d 905 (1966), that the necessary elements of deliberation and premeditation in the offense of murder may be inferred from the factual circumstances as shown by the evidence, provided the circumstances clearly warrant the jury in such inferences or conclusions. If the evidence is such as to be inconsistent with any other hypothesis than that of the crime charged, then an instruction on a lesser included offense would not be required. In cases too numerous to mention we have stated that deliberation and premeditation may be inferred from the circumstances of the case as presented at trial. However, it is equally clear that if the evidence presented warrants instructions on lesser included offenses, such instructions must be given. Premeditation and deliberation are not required to exist for any particular length of time and may be formed almost on the spur of the moment. When we review all of the facts and evidence in this case, we cannot escape the conclusion that lesser included offenses should have been presented to the jury through instructions by the court. It was reversible error to fail to give the additional instructions for consideration by the jury.

## VII.

## THE TRIAL COURT ERRED IN COMMENTING TO THE JURY ON THE GOVERNOR'S PARDONING POWER DURING DELIBERATIONS ON THE QUESTION OF SENTENCE.

In the case of *Bush* v. *State,* 261 Ark. 577, 550 S.W. 2d 175 (1977), we unequivocally held it was prejudicial error when a trial judge discussed the matter of possible parole with the jury, in response to the question of a juror. We held it immaterial whether an immediate objection was made because it was the judge's own error. We also held in *Bell* v. *State,* 223

Ark. 304, 265 S.W. 2d 709 (1954), that even though the trial judge innocently approached the jury, during deliberations, as to whether they wanted him to remain at the courthouse during the noon hour that the resulting conversation was reversible error. In *Bell* we specifically held that it was not even necessary for the defense counsel to make an objection in order for the remarks to constitute reversible error. Also, in *Adams v. State,* 263 Ark. 536, 566 S.W. 2d 387 (1978), we held that before a federal constitutional error could be held harmless that we must be able to declare it was harmless beyond a reasonable doubt. For the above reasons we hold the remarks on the power of the Governor to pardon were prejudicial and reversible error.

## VIII.

## THE TRIAL COURT ERRED IN REFUSING TO REQUIRE FULL DISCLOSURE.

We have previously discussed this under Point V wherein we pointed out the critical need for this information. We only add at this time that the orders and efforts of the court, reporter and prosecuting attorney brought no relief to appellant. Such efforts amounted to an empty gesture in so far as results to appellant are concerned. The court possesses the power to get this information and the evasive conduct of the state hospital employees should not be allowed to go unnoticed. The appellant is entitled to these records, if they exist, before he is put to a second trial. Therefore, it was prejudicial error to fail to furnish appellant with the requested information, if it was in existence. It was the duty of the state to show that the requested information did not exist.

## IX.

## THE TRIAL COURT ERRED IN CREATING AN IMPROPER INFLUENCE AND RELATIONSHIP WITH THE JURY THROUGH HIS COMMENTS TO A JUROR DURING THE PERIOD OF THEIR DELIBERATIONS.

We do not agree that the comment of the trial judge to a juror that the judge's daughter wanted him to say hello to the

juror was prejudicial. However, it would have been much better had the judge seen fit to wait to convey this message until the trial had ended.

## X.

## THE VERDICT ON GUILT WAS CONTRARY TO THE LAW AND THE GREAT WEIGHT OF THE EVIDENCE.

## XI.

## THE VERDICT ON SENTENCE WAS CONTRARY TO THE LAW AND THE GREAT WEIGHT OF THE EVIDENCE.

These two very important points are considered together. In view of the fact that we have already found reversible error, we need not set out a full discussion on these points for the reason that if the case is before us again it will, no doubt, contain other evidence and perhaps some of the existing evidence will not be included.

We do not feel that there should be a wooden application of the death penalty in every instance where an officer is killed. This is, of course, the purpose of considering aggravating and mitigating circumstances which will be discussed later in this opinion. We fully recognize that it is within the province of the jury to weigh the evidence and resolve conflicts and discrepancies in testimony. This Court considers only that evidence which is most favorable to the state on appeal and it is our duty to affirm if there is substantial evidence to support the jury's finding. *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17 (1975); *Scott* v. *State*, 254 Ark. 271, 492 S.W. 2d 902 (1973); and *Stout* v. *State*, 263 Ark. 355, 565 S.W. 2d 23 (1978). In *Stout* we stated:

Appellant contends that the circumstances do not exclude every other reasonable hypothesis other than that appellant acted with premeditation and deliberation. Ordinarily, this determination is for the jury, particularly on the question of the reasonableness of another hypothesis, if the evidence does more than give rise to a suspicion and does not leave the jury solely to specula-

tion and conjecture in determining whether other hypotheses are excluded. *Upton* v. *State*, 257 Ark. 424, 516 S.W. 2d 904; *Abbott* v. *State*, 256 Ark. 558, 508 S.W. 2d 733. On appellate review of the question, we view the evidence in the light most favorable to the state. *Abbott* v. *State*, supra. When we do so, and remember that the jury rejected appellant's version, the evidence is sufficient. See *Leonard* v. *State*, 251 Ark. 1090, 476 S.W. 2d 807; *McCray* v. *State*, 254 Ark. 601, 494 S.W. 2d 708.

## XII.

## THE INSTRUCTIONS GIVEN ON THE QUESTION OF AGGRAVATING AND MITIGATING FACTORS TO BE CONSIDERED IN DELIBERATING A SENTENCE DID NOT REFLECT THE LAW.

We agree with appellant that the forms used for aggravating and mitigating circumstances, which were obviously drawn up for use in the case of James Wilkerson, Jr., were not in accordance with the statutes in force at the time of trial. The court used what was designated as Form A to present the aggravating circumstances to the jury. Paragraph D on Form A, which was checked by the jury, provided: The capital murder was, beyond a reasonable doubt, committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. Paragraph F provided: The capital murder was, beyond a reasonable doubt, committed for the purpose of disrupting or hindering the lawful exercise of any governmental function, including enforcement of laws, or political function. Therefore, two aggravating circumstances were found by the jury to have existed. The present statute, Ark. Stat. Ann. § 41-1303 (5) states: The capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody; No. 7 provides: The capital murder was committed for the purpose of disrupting or hindering the lawful exercise of any governmental or political function. Therefore, Form A, as given to the jury, Paragraphs D and F, includes wording which would allow the same act (attempting to avoid arrest) to result in the finding of two aggravating circumstances.

Form B was used by the court to guide the jury in deter-

mining mitigating circumstances. This form listed mitigating circumstances, B thru G. Paragraph A was added after G and it provided the jury could find that one or more mitigating circumstances existed or one or more circumstances did not exist. Although every question had a space to be checked, when it was found that a mitigating circumstance did not exist, none of these blanks were checked. The court obviously assumed that since none of them were checked either positively or negatively it meant the jury found none of them to exist. We think the jury should have been instructed to check the affirmative or negative blank on each question presented to them.

The forms presented to the jury were obviously made up prior to the Arkansas Criminal Code and were improper. Also, counsel for appellant was not permitted to inspect these forms prior to their submission to the jury. Had such an opportunity been afforded, counsel would have probably objected to the erroneous instructions. No doubt, in the next trial these forms will be given proper consideration.

## XIII.

## THE DEATH PENALTY AS HERE APPLIED IS UNCONSTITUTIONAL.

In view of the results reached we do not consider the argument that the verdict in this case was arbitrary, capricious, wanton and freakish. It must await reconsideration before we make a determination of this argument. We have dealt with the Stewart-Powell-Stephens opinion in *Gregg v. Georgia,* 428 U.S. 153 (1976), and are not unmindful of the requirements set out therein. For a complete discussion on this point, see *Collins* v. *State,* 261 Ark. 195, 548 S.W. 2d 106 (1977).

## XIV.

## THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

This argument is rendered moot in view of the fact that the case is being remanded for a new trial. We do feel that the

facts in this case did require a new trial but different considerations may be before the court when the matter is again prosecuted. Our reasons for believing a new trial was warranted in the present situation are contained in discussion in this case under prior points.

Reversed and remanded.