Booker T. WESTBROOK, Petitioner

v.

Larry NORRIS, Director, Arkansas Department of Correction, Respondent.

No. PB–C–93–620.

United States District Court, E.D. Arkansas, Pine Bluff Division.

April 9, 1996.

John D. Ogles, Jacksonville, Arkansas, for petitioner.

Teena Lynn White, Arkansas Attorney General's Office, Little Rock, Arkansas, for respondent.

### ORDER

STEPHEN M. REASONER, Chief Judge.

The Court has received proposed findings and recommendations from United States Magistrate Judge Henry L. Jones, Jr. There have been no objections. After careful review, the Court concludes that the findings and recommendations should be, and are hereby, approved and adopted as this Court's findings in all respects in their entirety. Judgment shall be entered accordingly.

IT IS SO ORDERED.

### PROPOSED FINDINGS AND RECOMMENDATIONS

JONES, United States Magistrate Judge.

Petitioner was convicted of capital murder and sentenced to death, but his conviction was reversed and remanded on direct appeal. *Westbrook v. State*, 265 Ark. 736, 580 S.W.2d 702 (1979).[1] On October 13, 1980, petitioner was again convicted, but was sentenced to life in prison without parole. This conviction was affirmed on appeal. *Westbrook v. State*, 274 Ark. 309, 624 S.W.2d 433 (1981). In this petition for a writ of habeas corpus, petitioner raises the following grounds for relief:

1. The Arkansas Supreme Court on direct appeal should have reversed his first conviction due to insufficiency of the evidence regarding the *mens rea* element of the crime (premeditation and deliberation), thereby rendering a second trial a violation of the double jeopardy clause;

2. The evidence in his second trial was insufficient to prove beyond a reasonable doubt that petitioner had the requisite premeditated and deliberate state of mind necessary to commit the offense, because the doctors who testified had perjured themselves at his first trial;

3. The judge in the second trial should have allowed the defense to make the jurors aware of the perjury and deceit in the first trial by the state's expert witnesses from the State Hospital in order to undermine their credibility;

4. Petitioner was denied a fair trial by an impartial jury where the state statutes allowed the jury commission a possible means of discriminating against black defendants in the jury selection process in violation of petitioner's rights under the Sixth Amendment;

5. Petitioner's conviction was obtained in violation of his Sixth Amendment right to a fair trial by an impartial jury when the trial judge refused to grant his motion to quash the jury panel for racial discrimination in its selection;

6. Petitioner's conviction was obtained by the denial of his rights to due process and equal protection when the trial judge refused to grant a defense motion for the appointment of an independent psychiatric expert at public expense to aid the defense in the presentation of the affirmative defense of insanity;

7. Petitioner's conviction was obtained in violation of his right to due process to have a directed verdict of acquittal based on the insufficiency of the evidence when the trial court failed to take the issue of his mental capacity from the jury; and

---

1. The Arkansas Supreme Court found that the trial court erred in denying petitioner's motion for the trial judge to recuse without a hearing, the trial court should have ruled on the question of whether petitioner was fit to proceed to trial; the trial court should have granted petitioner's motion for a continuance in order to obtain records from the State Hospital and the trial court should have seen to it that petitioner received the records; the trial court erred in failing to give a lesser included offense instruction; it was error for the trial judge to comment to the jury on the power of the Governor to pardon petitioner; and the trial court submitted improper forms to the jury.

8. The trial court refused to give an instruction to the jury concerning petitioner's possession of the kind of culpable mental state required for the commission of the offense charged.

## I.

■ Petitioner does not disagree with the court's finding in its order entered on October 24, 1995, that he did not properly raise grounds one, two and three in state court, and he offers no explanation for his default. Thus, these claims are procedurally barred and may not be considered here. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Petitioner also does not disagree with the court's finding that grounds four and five are essentially the same claim, and are procedurally barred because petitioner did not fully develop them in state court.[2] Petitioner has offered no explanation as cause for the default and these claims may not be considered here. *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 9, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992).

## II.

■ Petitioner's ground six is that he was denied due process and equal protection when the trial court refused to appoint an independent psychiatric expert to aid in the presentation of his defense.

[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist ... and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

*Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985).[3]

Petitioner was charged with the August 1977 killing of the Chief of Police of Dermott, Arkansas. Petitioner's only defense was that he suffered from a mental disease or defect. Prior to petitioner's first trial, the trial court conducted a competency hearing, but did not make a finding regarding petitioner's mental condition. The Arkansas Supreme Court found the trial court erred in not making this determination and reversed the conviction based on this and other errors.

On remand, the trial court held a hearing on November 6, 1979, and found petitioner was not competent to stand trial. The court committed him to the State Hospital for treatment and evaluation. (TR. 1072–1218). In September of 1980, a report from Dr. William Joe James, Medical Director of the Southeast Arkansas Mental Health Center, indicated petitioner was without psychosis and had the ability to understand the proceedings against him and to assist in his own defense. (TR. 50).

Thereafter, petitioner's second trial was scheduled. At a hearing on pretrial motions two weeks before trial, the judge found petitioner was competent to stand trial, but he also ruled that, because of the conflicting evidence in the record, he could not find as a matter of law that petitioner was incompetent at the time of the commission of the crime. (TR. 1032, 1039).

---

2. Petitioner raised a similar claim on direct appeal, but the Arkansas Supreme Court found he had presented no evidence of discrimination in the selection process. *Westbrook v. State*, 274 Ark. at 310, 624 S.W.2d 433.

3. *Ake* was decided after petitioner's second conviction became final. Only one court has ruled on the retroactivity of the *Ake* decision. In *Bas-*

*sette v. Thompson*, 915 F.2d 932 (4th Cir.1990), the court held that *Ake* announced a new rule that was not retroactive under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Eighth Circuit has not considered the question. The respondent has not argued that *Ake* does not apply to petitioner's case and the court declines to address it here.

The defense moved for the appointment of an independent psychiatrist. (TR. 1011). The judge noted that, at the time of the hearing, petitioner was being evaluated at the Southeast Arkansas Mental Health Center, pursuant to a request by the defense, and that the director of that facility had informed the court that the Center was independent of the State Hospital. (TR. 1044, 1048, 1050). Defense counsel argued that this evaluation did not satisfy his request because the Center was not independent or private, since it was established by the Quorum Court of the county; there was a conflict between counsel and the doctors at the Center "because of a number of on-going cases between ... present counsel and doctors" at the Center; and the doctors there were "not the choice of the Defendant and that he believes under the Sixth Amendment he is entitled to the appointment of someone at state expense in whom he can have confidence and trust and with whom he can ... prepare his defense." (TR. 1046–1051). Defense counsel requested the court to appoint Dr. George Jackson or Dr. Douglas Stevens to examine petitioner and to assist in the defense.

The judge denied the motion, finding that the Southeast Arkansas Mental Health Center fulfilled the requirement of an independent examination, that petitioner had been sent there because defense counsel had specifically requested he be sent there and that the court did not know at the time of the request of any conflict between defense counsel and the doctors at the Center. (TR. 1066–68). On direct appeal, the Arkansas Supreme Court denied relief, finding that the question had been decided against petitioner in his first appeal and that, in any event he "was twice sent to the State Hospital for examination, with findings that he was without psychosis, and expert witnesses gave testimony favorable to him on the issue of his mental capacity." *Westbrook v. State*, 274 Ark. at 310, 624 S.W.2d 433.

At trial, Dr. R.H. Whitehead, Jr., a psychiatrist with the Arkansas State Hospital who evaluated petitioner in September of 1977 soon after the murder, testified that the staff at the hospital found petitioner was without psychosis, but that he had an "I.Q. of 68 with psycho-social emotional deprivation." (TR. 460). He stated "it is the opinion of the examining psychiatrist and the joint opinion of the Psychiactric (sic) Staff that Booker ... Booker T. Westbrook is not mentally deficient to the degree of latent irresponsibility at the time of the examination and probably was not at the time of the commencement of the alleged offense." (TR. 510).

The defense called Dr. Tom Burford, director of the Southeast Arkansas Treatment Section of the State Hospital and acting Medical Director of the Hospital, who testified he treated petitioner at the State Hospital in 1974, three years prior to the murder with which petitioner was charged. He stated that petitioner was admitted "on a physician's statement" and was found to have paranoid schizophrenia, and that petitioner had a previous admission in 1972 with the same diagnosis. (TR. 600, 615). He also stated that in 1972 petitioner had delusions and thought he heard voices (TR. 615), and in 1974 he was paranoid. (TR. 601).

Dr. Burford explained that "schizophrenia is a thought disorder of psychotic proportions," that it is one of the worst mental illnesses and that, if "it doesn't clear in the first time or two, it has a chronic ... force then and will cause intellectual impairment, where you become less and less ... intelligent, actually as time goes by and more resistive to treatment." (TR. 603–04). He stated that schizophrenics usually do not distinguish reality from unreality, which impairs their judgment, and that the condition can go into remission or be exacerbated, but that the condition usually does not go away in persons who have had it over a number of years. (TR. 604). The primary treatment of schizophrenia is anti-psychotic medication, which clears the symptoms. Thorazine is the standard drug and the lowest therapeutic dose is four hundred milligrams, but a thousand milligrams is not an unusual amount. (TR. 606–07).

He further testified that, besides remission brought about by medication, there are "natural cycles" during which persons may be clear and then become symptomatic again, but he had no basis for determining whether

petitioner was or was not in remission at the time of the murder, because he did not see petitioner in 1977. (TR. 612). He stated that when petitioner was released from the hospital in 1974, he had reached a "social remission, in that he could live at home and go to a community mental health center to have his mental needs cared for" and "he was able to conform his conduct to accepted standards." (TR. 614). He stated that petitioner's symptoms in 1974 were different from those in 1972 and he could have had different symptoms in 1977; that the length of time it takes medication to wear off varies with individuals from several days to several weeks to three or four months. (TR. 616).

The defense also called Dr. James Vasilos, a licensed psychologist with a Ph.D. in clinical psychology, who worked at the Delta Counseling and Guidance Center and evaluated petitioner on September 25, 1979. He testified that petitioner went into "absurd" detail in conversation and had "a kind of an associative disturbance in which thought and speech digress or diverge as the topic of the moment, so that they often appear unrelated or irrelevant." (TR. 628). The diagnosis he reached, based on his observation of petitioner and petitioner's test scores, was schizophrenia, chronic undifferentiated type, which meant that petitioner was showing a number of different symptoms that suggested schizophrenia and that he was psychotic. (TR. 631, 647). Dr. Vasilos could not, however, determine petitioner's condition in 1977.

Dr. Joe E. Hutchinson, a psychiatrist at the Delta Counseling and Guidance Center and at the State Hospital, testified that he saw petitioner on May 22, 1976, for a follow-up medication check after he was discharged from the State Hospital, where he had been diagnosed as paranoid schizophrenic. He also saw petitioner on January 29, 1977, prior to the murder in August of 1977, at which time the diagnosis was the same. Petitioner was continuing to take his medication and was in remission and showed no psychotic behavior. (TR. 656, 686, 689).

Dr. Hutchinson also saw petitioner September 27, 1979, for a psychiatric evaluation, at which time he found petitioner

hyper-active, hyper-talkative, circumstantial and appropriate in his conversation, exhibits much thought disorder. His flight of ideas and circumstantiality frequently prevent him from attaining his thought goals in the examination. He makes poor eye contact, laughs inappropriately, definitely feels persecuted. He denies auditory hallucinations except in the form of what God ... is always talking to him during his religious episodes. His judgement is considered to be erroneous and inappropriate at this time. It is not felt that he could aid in his defense at this particular time. His awareness of his present situation is somewhat diminished, but he is generally aware that the impending trial is to quote, "Get me off the hook", unquote. The patient's description of the alleged crime and compared to the description of his record is essentially correct. He exhibits some evidence of mild mental retardation, but not to a disabling degree. My impression was prominent, undifferentiated, schizophrenia."

(TR. 659). He stated that petitioner suffered from numerous delusions. (TR. 662).

Dr. Hutchinson also testified that, although after several episodes of acute schizophrenia the diagnosis became chronic, undifferentiated schizophrenia, there was no way to determine with any degree of reasonable certainty whether, at any point in a person's history, he would go into remission or not and there was no way for him to determine what petitioner's condition was at the time of the crime. (TR. 668). He also stated that, prior to his evaluation, petitioner had been off of his medication, which would contribute to his condition, and that some persons suffering from schizophrenia are able to conform their actions to socially accepted standards. (TR. 676).

Counsel for petitioner was allowed to read into the record at trial in the presence of the jury a report from Steven J. Smith, MSW, at the Delta Counseling and Guidance Center, who evaluated petitioner on September 29, 1979, at the request of the circuit court. (TR. 693). The report contained petitioner's treatment and diagnostic history from 1971 to 1979, information Mr. Smith obtained from

petitioner during the evaluation and Mr. Smith's observations. Mr. Smith's conclusion was that petitioner was suffering from a chronic schizophrenic thought disorder, that he was not capable of assisting in his own defense, that petitioner was aware of what he was doing at the time of the shooting, but that, "based upon his impulsiveness and limited intelligence according to recent intelligence tests that he was not able to maintain control of himself." (TR. 694–697, 932).

Also testifying for the defense was Dr. Angelo D. Llana, who at the time of his evaluation of petitioner was Medical Director of the Delta Counseling and Guidance Center. (TR. 698). He first saw petitioner on November 8, 1977, shortly after the murder, at the request of the Prosecuting Attorney. He indicated to the prosecutor that he saw definite signs of mental illness and wanted to see petitioner again, which he did on January 4, 1978, at which time he conducted a full psychiatric examination. He stated he felt he had sufficient clinical data to make the diagnosis during his evaluation in November, but he wanted to conduct another interview to confirm his first impression. (TR. 703) Based on petitioner's condition and responses during the evaluation, Dr. Llana "definitely detected signs and symptoms of a psychotic reaction" (TR. 702) and found that petitioner was a paranoid schizophrenic. (TR. 704). He detailed petitioner's condition, including aberrant thinking and moods, hallucinations similar to those noted above, paranoia and impaired volition. He concluded that at the time of the commission of the crime, petitioner did not have the capacity to conform his actions to the law. (TR. 710) He also testified that a person experiencing a psychotic episode may become free of symptoms after a traumatic episode, (TR. 710–12), which could explain why petitioner would not have shown evidence of psychosis when he was examined by Dr. Whitehead at the State Hospital immediately after the murder.

In rebuttal, the State called Dr. Walter Randolph Oglesky,[4] a Forensic Psychiatrist who was the Director of Forensic Psychiatry Services at the State Hospital and who par-

ticipated in the evaluation of petitioner shortly after the murder and wrote the report that was submitted to the court on September 27, 1977. Dr. Oglesky testified that he and the other members of the staff at the Hospital who evaluated petitioner concluded that petitioner "was not suffering from mental disease or defect of such degree that he could not appreciate the criminality of his conduct at the time of the alleged offense." (TR. 759). He stated that he interviewed petitioner the day after the murder and petitioner had a clear recollection of the events, he told the story the same way on two occasions and he did not mention hearing voices or anything else that would appear delusional. (TR. 765). He also stated that petitioner contended the shooting was an accident, that he wrestled the gun away from the Chief and he really did not intend to shoot him. (TR. 766).

Dr. Oglesky further testified that he was aware that petitioner was later determined to be incompetent and committed to the Hospital for treatment and evaluation, but that did not change his opinion of petitioner's condition in August of 1977, because signs of schizophrenia may completely disappear with treatment. He learned from an employee of the Department of Correction that petitioner had not received any medication or treatment after he was committed to the Department following his first trial. (TR. 767). The doctor stated it would not have been inconsistent with their findings if petitioner were found to be exhibiting symptoms of psychotic behavior in November of 1977 and January of 1978 because of lack of medication, but that he and the other staff members saw no evidence of psychotic illness when they evaluated him in September of 1977. (TR. 768).

The Eighth Circuit has held that a competency examination at the Arkansas State Hospital and the ability to subpoena and question the professionals who performed the evaluation does not satisfy *Ake*. *Starr v. Lockhart*, 23 F.3d 1280 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 499, 130

---

4. From other cases in which this witness has testified, the court is of the opinion that the correct spelling is "Oglesby," but for purposes of this record will use the spelling in the transcript.

L.Ed.2d 409 (1994). As the *Ake* court explained,

> without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high. With such assistance, the defendant is fairly able to present at least enough information to the jury, in a meaningful manner, as to permit it to make a sensible determination.

*Ake v. Oklahoma,* supra at 82, 105 S.Ct. at 1096.

In the present case, however, I cannot find petitioner's constitutional rights were violated. Petitioner had numerous professional witnesses who testified favorably for him, including Dr. Llana, who testified petitioner was incompetent at the time of the commission of the offense. Counsel, through these witnesses, explained that petitioner could have been psychotic at the time of the offense and appear in remission during his evaluation at the State Hospital immediately thereafter. Counsel also conducted extensive and probing cross-examination of the prosecution's expert witnesses. Petitioner's contention that he should have had opportunity to choose a private psychiatrist of his personal liking was specifically rejected by the *Ake* court. I find that all of the requirements of *Ake* were satisfied in this case and petitioner's claim has no merit.

### III.

■ Under ground six, petitioner includes the separate argument that he was not competent to proceed to trial. The conviction of a person incompetent at the time of trial violates due process. *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The test for determining whether a defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against

him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A trial court is required to hold a hearing whenever evidence raises a sufficient doubt as to a defendant's competency to stand trial. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

> The exact nature and amount of evidence necessary to establish a sufficient doubt is uncertain—"no fixed or immutable signs ... invariably indicate the need" for a hearing. According to the Supreme Court, factors to consider include: (1) evidence of irrational behavior by the accused, (2) the demeanor of the accused at trial, and (3) any prior medical opinion on the mental competency of the accused to stand trial. Any one of these factors alone can, "in some circumstances, be sufficient." In addition, the Supreme Court has stated that an express doubt by the attorney for the accused is a legitimate factor to consider, but alone is not enough to create a sufficient doubt.

*Griffin v. Lockhart,* 935 F.2d 926, 930 (8th Cir.1991) (citations omitted). Although a defendant may be "competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial," and should such circumstances arise, hold a competency hearing, either upon a motion or *sua sponte. Drope v. Missouri,* 420 U.S. 162, 181, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975); *Griffin v. Lockhart,* 935 F.2d at 930.

■ A state court's factual finding of competence is entitled to the presumption of correctness in 28 U.S.C. § 2254(d), unless the "accused 'did not receive a full, fair, and adequate hearing' or 'was otherwise denied due process of law in the State court proceeding.'" *Id.* In addition, a habeas petitioner has

> "'the burden of proving that objective facts known to the trial court'" raised a sufficient doubt. In our review then we ask ourselves "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have ex-

perienced doubt with respect to competency to stand trial.' "

*Id.,* (citations omitted).

■ Petitioner's competency hearing on November 6, 1979, his subsequent commitment, treatment and evaluation and the trial court's later finding that he was competent to stand trial satisfied his right to due process in this case. Petitioner has offered no evidence available to the trial court between the determination in September of 1980 that he was fit to proceed and the verdict on October 13, 1980, that would have required the judge to order another competency hearing. I find that petitioner received a full, fair and adequate hearing and he is not entitled to relief on this claim.

## IV.

■ Petitioner's ground seven is that his "conviction was obtained in violation of his 6th Amendment and 14th Amendment [right to] due process to have a directed verdict of acquittal due to the insufficiency of the evidence ... when the [trial court] failed to take the issue of his mental capacity from the jury."

Ark.Code Ann. 5–2–313 provides:

On the basis of the report filed pursuant to § 5–2–305, the court may, after a hearing if a hearing is requested, enter judgment of acquittal on the ground of mental disease or defect if it is satisfied that, at the time of the conduct charged, the defendant lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.[5]

At the end of the competency hearing on November 6, 1979, counsel for petitioner moved for dismissal of the charges under this statute. The record at that time contained a report from the State Hospital dated September 27, 1977, indicating that petitioner probably was not incompetent at the time of the commission of the alleged offense. Dr. Llana and Mr. Smith testified at the hearing that, at the time of the commission of the crime, petitioner did not have the capacity to conform his actions to the law. Doctors Bur-

ford, Vasilos and Hutchinson gave essentially the same testimony they gave at trial, that is, that they could not determine whether petitioner was incompetent at the time of the commission of the offense. On appeal, the Arkansas Supreme Court found that

the testimony was in decided conflict with respect to the defendant's mental capacity. The trial judge properly refused to take the issue from the jury, to whom it was later submitted at the trial. As the Commentary to Section 41–609 of the Criminal Code points out, the statute permits the trial judge to acquit the defendant "in cases of extreme mental disease or defect where the lack of responsibility on the part of the defendant is clear," it being contemplated that the defendant will then be hospitalized. That was not the situation in this case. Quite the contrary, the trial judge would have been wrong if he had acquitted the appellant upon the conflicting proof presented at the hearing.

*Westbrook v. State,* 274 Ark. at 311, 624 S.W.2d 433. This court finds that the record contained conflicting evidence and that petitioner was not entitled to a directed verdict of acquittal under state law.

## V.

Petitioner's final ground for relief is that the trial court refused to give an instruction to the jury concerning petitioner's "possession of the kind of culpable mental state required for the commission of the offense charged." This claim is vague and conclusory. If it is the same issue petitioner raised on direct appeal, the Arkansas Supreme Court stated:

Fourth, it is argued that the trial judge, in addition to giving AMCI 4009 on the issue of mental disease or defect, should also have given an instruction under Section 41–602 with regard to defendant's possession of the kind of culpable mental state required for the commission of the offense charged. That same question was rejected in *Robinson v. State,* 269 Ark. 90, 598 S.W.2d 421 (1980). Also, the defense failed to offer an instruction that would

---

5. At the time of petitioner's trial, this statute was codified as Ark.Stat.Ann. § 41–609.

have submitted the issue to the jury. Hence there is now no basis for complaint. *Hays v. State,* 219 Ark. 301, 241 S.W.2d 266 (1951).

*Id.*

▆▆▆ Respondent contends petitioner did not properly raise this issue in state court, and is procedurally barred from raising it in these proceedings. It appears, however, that the defense did offer some instruction concerning the mental capacity defense that was rejected because the trial court found the offered instruction was covered in Instruction AMCI 4009. (TR. 800). Moreover,

[i]f a state court ignores a potential procedural bar and reaches the merits of a prisoner's claim, the federal habeas courts may consider the claim. *Vickers v. Ricketts,* 798 F.2d 369, 373 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987). If the state court relies upon both the substantive merits and a procedural default in rejecting a petitioner's claim, federal habeas review of the claim is precluded "only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed,* [489] U.S. [255], [262] 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). Therefore, only if the state court issues a "plain statement" that it is rejecting petitioner's federal claim on state procedural grounds will federal habeas courts be precluded from reaching the merits of the claim. *Id.* [at 262, 263] 109 S.Ct. at 1043, 1044.

*Shaddy v. Clarke,* 890 F.2d 1016, 1017–18 (8th Cir.1989).

▆▆▆ This court need not determine whether the state court based its ruling on the merits or on the alleged default, because even if the claim is properly before this court, petitioner is not entitled to relief. The jury was instructed under AMCI 4009 that the prosecution had to prove each element of the crime of capital murder, and lesser included offenses, beyond a reasonable doubt, including the culpable mental state required for each crime. (TR. 806–11). The jury was also instructed on the affirmative defense of mental disease or defect and that petitioner

had the burden to prove this defense by a preponderance of the evidence.

Ark.Stat.Ann. 41–602 (now codified at § 5-2–303), the statute cited by the Arkansas Supreme Court as the one relied upon by petitioner, provides:

Evidence that the defendant suffered from a mental disease or defect is admissible to prove whether he had the kind of culpable mental state required for commission of the offense charged.

As noted in its opinion, the Arkansas Supreme Court had found in *Robinson* that a defendant was not entitled to a specific instruction under this statute. In the *Robinson* case, the court stated,

The statute simply clarifies any issue concerning the admissibility of mental disease evidence when it is less than persuasive in connection with an affirmative defense of insanity. Moreover, the essence of appellant's proffered instruction is effectively given when the court instructs the jury on the burden of the state to prove beyond a reasonable doubt each element of the offense, especially when such instruction is accompanied by an instruction on lesser included offenses.

*Robinson v. State,* 269 Ark. at 95, 598 S.W.2d 421.

▆▆▆ It is now well settled that

"federal habeas relief from a state conviction is not available because of improper jury instructions unless the error constitutes a fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive the defendant of a fair trial. Moreover, "[a] state court's interpretation of state law is binding upon a federal court in a habeas proceeding."

*Baker v. Leapley,* 965 F.2d 657, 659 (8th Cir.1992). Petitioner has fallen far short of showing that the trial court's denial of the requested instruction resulted in a complete miscarriage of justice.

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed.

SO ORDERED this 15th day of March, 1996.